[S. F. No. 22635. In Bank. June 18, 1969.]

THOMAS EDWARD GREVEN et al., Petitioners, v. THE
SUPERIOR COURT OF SANTA CLARA COUNTY,
Respondent; THE PEOPLE, Real Party in Interest.

D. J. Sposeto for Petitioners.

No appearance for Respondent.

Thomas C. Lynch, Attorney General, Albert W. Harris, Jr., Assistant Attorney General, Robert R. Granucci, Michael Buzzell and Derald E. Granberg, Deputy Attorneys General, for Real Party in Interest.

SULLIVAN, J.—In count one of an information filed on July 26, 1968, the six petitioners (Thomas Edward Greven, John Buchanan Karigan, Benjamin Falk, Georgia Lee Otoupalik, Brooks Pride Hodapp and Candace Ann Jacobs) were charged with possession of marijuana in violation of section 11530 of the Health and Safety Code.[1] In count two the six petitioners were charged with cultivation and growing of marijuana in violation of the same section. In count three, four of the petitioners (Falk, Hodapp, Karigan, Greven) were charged with maintaining a place for the unlawful use of narcotics in violation of section 11557. In count four petitioner Otoupalik was charged with possession of amphetamine in violation of section 11910. In count five petitioners Hodapp and Karigan were charged with possession of lysergic acid diethylamide, also known as LSD, in violation of section 11910.

Petitioners (defendants below) entered pleas of not guilty on all counts and moved to suppress evidence under section 1538.5 of the Penal Code. It was stipulated that such motion be submitted on the transcript of the preliminary examination and argument by counsel. The motion was denied after a special hearing (§ 1538.5, subd. (i)) and petitioners thereupon filed the instant petition for a writ of mandate or prohibition. (Pen. Code, § 1538.5, subd. (i).) We issued an alternative writ of prohibition.

Evidence of the following facts was presented at the preliminary examination: About 1 a.m. on June 14, 1968, a group of nine officers of the San Jose Police Department assembled in the parking lot of a cannery in that city. On a previous occasion, Officer Frechette, one of the group, had

---

[1] All statutory references in this paragraph are to the Health and Safety Code.

purchased marijuana from defendant 'Falk at the latter's residence which was located near the parking lot. Earlier in the evening of June 14, Frechette had attempted to make another purchase from Falk; the attempt had failed, but the officer had been admitted to Falk's house, had seen marijuana in Falk's possession, and had seen and heard other persons on the premises. After Officer Frechette returned to the group of police at the parking lot and related the above information, all of the officers proceeded to the Falk residence to make an arrest.[2] They had no warrants of any kind.

The Falk residence, which the lieutenant in charge of the group termed a ''Hippie type pad'' in his testimony before the magistrate, was apparently an older house rented by the four male defendants and frequented by students and other college-age persons. The kitchen, where earlier that evening Officer Frechette had seen marijuana in Falk's possession, was located at the rear of the house and at the end of a hall leading from the front doorway. As the officers approached they noted that lights were on in the kitchen area but that the remainder of the house, including the entire front portion, was dark.

Led by Lieutenant Hardman, the officer in charge, the group of officers went to the front door of the residence. The lieutenant knocked on the front door and, according to the undisputed testimony of one of the officers, ''We waited for ten to fifteen seconds, received no answer, heard no footsteps or activity within the residence, tried the front door which was unlocked, and entered the residence.''[3] Lieutenant Hardman proceeded directly down the darkened hallway to the kitchen, where he found Falk studying at a table; on the table was a small quantity of marijuana and some cigarette papers. The other officers, using flashlights, searched the several darkened bedrooms which branched off from the hallway. Defendant Otoupalik was found in one of the bedrooms; in her purse were capsules which were later shown to be amphetamines. Defendant Greven was alseep in another bed-

---

[2]There is some conflict in the evidence whether the purpose of the officers was simply that of arresting Falk. At the preliminary examination some of the officers testified that their intention also included the arrest of other persons in the residence for visiting a place where narcotics are used. (Health & Saf. Code, § 11556.)

[3]Lieutenant Hardman's testimony, while consistent in other respects with that quoted, was to the effect that it was unnecessary to ''try'' the front door: ''The door was open. In other words, the door was not completely closed and when I subsequently rapped on the door, the door swung open. I walked right in.''

room; a small quantity of marijuana was found on a shelf near his bed. Defendant Karigan was found lying on a mattress in another bedroom; in a knapsack in the room were found a small quantity of marijuana and some capsules which were later shown to be LSD. Defendants Hodapp and Jacobs were discovered lying together on a mattress in another bedroom; a small quantity of marijuana was found in a dresser drawer in the bedroom, and a subsequent search of a storage room disclosed a knapsack bearing the name of defendant Hodapp and containing some capsules later shown to be LSD. Finally, on the back stairway of the house the officers found a wooden crate containing cultivated marijuana plants. All defendants were arrested.

Immediately after their arraignment in the superior court petitioners moved under section 1538.5 of the Penal Code to suppress evidence obtained at the Falk residence. As one of the grounds for this motion they urged that the seizure of this evidence and the attendant search were unreasonable and unlawful because the officers had failed to comply with the provisions of section 844 of the Penal Code.[4] It is upon this ground that they seek relief in the instant proceeding.

We first conclude that the issue sought to be raised is properly before us at this time. An entry effected in violation of the provisions of section 844 or its counterpart section 1531 renders any following search and seizure "unreasonable" within the meaning of the Fourth Amendment. (*People* v. *Rosales* (1968) 68 Cal.2d 299, 304-305 [66 Cal. Rptr. 1, 437 P.2d 487]; *People* v. *Gastelo* (1967) 67 Cal.2d 586, 588-589 [63 Cal.Rptr. 10, 432 P.2d 706]; see *Miller* v. *United States* (1958) 357 U.S. 301, 313-314 [2 L.Ed.2d 1332, 1340-1341, 78 S.Ct. 1190].) Section 1538.5, subdivision (a), provides that a defendant may move to suppress as evidence anything obtained "as a result of a search or seizure on the ground that: (1) The search or seizure without a warrant was unreasonable. . . ." The motion may be made in the first instance at a special pretrial hearing[5] before the superior

---

[4]Section 844 provides: "To make an arrest, a private person, if the offense be a felony, and in all cases a peace-officer, may break open the door or window of the house in which the person to be arrested is, or in which they have reasonable grounds for believing him to be, after having demanded admittance and explained the purpose for which admittance is desired."

[5]The motion may also be made in the first instance at the preliminary examination (§ 1538.5, subd. (f)) and if there denied may be "renewed" at a special hearing before the superior court (§ 1538.5, subd. (i)). In certain circumstances the motion may be made for the first time "during the course of the trial." (§ 1538.5, subd. (h).)

court subsequent to the issuance of an information or the finding of an indictment. (§ 1538.5, subd. (i).) "After the special hearing is held in the superior court, any review thereafter desired by the defendant prior to trial shall be by means of an extraordinary writ of mandate or prohibition filed within 30 days after the denial of his motion at the special hearing." (§ 1538.5, subd. (i).) Defendants, by promptly raising the issue of noncompliance with section 844 as a ground of their motion to suppress under section 1538.5, and by seeking appropriate extraordinary relief upon denial of this motion, have properly presented the issue for determination by this court.

We turn to the merits. The Attorney General does not suggest that the entry here in question was effected in strict compliance with the literal terms of section 844. He does urge, however, that the entry was effected in a manner which constituted "substantial compliance" with the terms of the section—and he relies upon the several cases wherein this court has upheld an entry which did not strictly comport with the statutory requirements. (See *People* v. *Marshall* (1968) 69 Cal.2d 51, 55-56 [69 Cal.Rptr. 585, 442 P.2d 665]; *People* v. *Cockrell* (1965) 63 Cal.2d 659, 665-666 [47 Cal.Rptr. 788, 408 P.2d 116]; *People* v. *Carswell* (1959) 51 Cal.2d 602, 607 [335 P.2d 99]; *People* v. *Martin* (1955) 45 Cal.2d 755, 762-763 [290 P.2d 855].)

The reliance is misplaced. It is true that in the cited cases this court has held that the requirements of section 844 were satisfied by "substantial compliance" which fell short of strict literal compliance. In each of these cases, however, the officers prior to entry not only gave notice of their presence through knocking or some other means *but also* identified themselves as police officers. It was the second requirement of section 844, to wit, that the officers explain "the purpose for which admittance was desired," which we undertook to apply in light of the facts and circumstances of the case in order to determine whether "substantial compliance" had been achieved in the absence of an express announcement of purpose. In *People* v. *Rosales, supra,* 68 Cal.2d 299 at page 302, we recently restated the rationale of these cases: "Such identification [i.e., identification as police officers without an express announcement of purpose] alone could constitute substantial compliance with section 844 only if the surrounding circumstances made the officers' purpose clear to the occupants or showed that a demand for admittance would be

futile.'' (See also *People* v. *Cockrell, supra,* 63 Cal.2d 659, 665-666; *People* v. *Martin, supra,* 45 Cal.2d 755, 762-763.)

It is clear that the cases here under consideration stand for the proposition that an entry is not *necessarily* unlawful because the officers fail to make an express announcement of purpose. It is equally clear that they go no further than that. Neither they nor any other decision of this court has ever held that ''substantial compliance'' with section 844 can be achieved in the absence of an announcement by the officers identifying themselves as such.[6]

There is a very good reason for this. Announcement rules such as that set forth in section 844 rest upon a doctrinal base exhibiting two related aspects. One of these reflects ''the reverence of the laws for the individual's right of privacy in his house.'' (*Miller* v. *United States, supra,* 357 U.S. 301, 313 [2 L.Ed.2d 1332, 1340, 78 S.Ct. 1190]; see also *Sabbath* v. *United States* (1968) 391 U.S. 585, 589 [20 L.Ed.2d 828, 833, 88 S.Ct. 1755]; *People* v. *Rosales, supra,* 68 Cal.2d 299, 304-305; *People* v. *Gastelo, supra,* 67 Cal.2d 586, 588-589.)[7] The other, which is certainly of equal importance and relevance[8] but is less frequently invoked to aid in the resolution of particular cases, is the policy discouraging where possible the creation of situations conducive to violence. Thus, in the recent case of *Sabbath* v. *United States, supra,* 391 U.S. 585, at page 589 [20 L.Ed.2d 828 at p. 833, 88 S.Ct. 1755], the United States Supreme Court noted that ''another facet of the rule of announcement was, generally, to safeguard officers, who might be mistaken, upon an unannounced intrusion into a home, for someone with no right to be there.'' (See also

---

[6]Although section 844 itself does not specifically require that an officer identify himself as such prior to making a forced entry, its counterpart section 1531, dealing with the execution of search warrants, provides that an officer may resort to forcible entry only after giving ''notice of his authority.'' Because the two sections are ''identical in principle'' insofar as their announcement requirements are concerned (*People* v. *Villanueva* (1963) 220 Cal.App.2d 443, 447 [33 Cal.Rptr. 811]), the requirement of identification is an integral part of the rule stated in section 844.

[7]In *People* v. *Rosales, supra,* we indicated that rules of announcement reflect a concern not only for the rights of persons suspected of crimes but also for ''the security of innocent persons who may also be present on the premises where an arrest is made.'' (68 Cal.2d at p. 304.)

[8]One commentator has suggested that all questions of announcement and unlawful entry should be approached from the aspect of discouraging potentially violent situations, and that analysis from the aspect of privacy leads to more confusion than elightenment. (Blakey, *The Rule of Announcement and Unlawful Entry* (1964) 112 U.Pa.L.Rev. 499, especially 557-559.)

*Miller* v. *United States, supra,* 357 U.S. 301, 313, fn. 12 [2 L.Ed.2d 1332, 1340, 78 S.Ct. 1190]; *McDonald* v. *United States* (1948) 335 U.S. 451, 460-461 [93 L.Ed. 153, 160-161, 69 S.Ct. 191] (concurring opinion per Jackson, J.).) Similarly, in *People* v. *Rosales, supra,* 68 Cal.2d 299, at page 304, this court observed that the rule of section 844 ''serves to preclude violent resistance to unexplained entries. . . .''

The presence of this second doctrinal aspect of the rule of announcement requires that minimum compliance with that rule include an effort by the officers prior to entry to communicate to persons inside[9] that they seek to be admitted in order to discharge their duties *as law enforcement officers.* Any other result would emasculate this basic justification for the rule: few actions are as likely to evoke violent response from a householder as unannounced entry by a person whose identity and purpose are unknown to the householder.

■ We hold that the rule of announcement set forth in section 844 of the Penal Code is not complied with unless the officers prior to entry give notice of their authority.[10]

The People place heavy reliance on the case of *People* v. *Cox* (1968) 263 Cal.App.2d 176 [69 Cal.Rptr. 410]. There officers, seeking to execute an arrest warrant naming defendant and alleging reasonable and probable cause to believe him guilty of automobile embezzlement, went to a house leased by him and in which, according to the findings of the magistrate and the trial judge, they reasonably believed him to be. (See fn. 9, *ante.*) They knocked loudly on the door but received no reply. Then, while one officer remained at the front door, another went to the rear of the house and onto the back porch where he observed that the back door to the house was propped open. He made a brief inspection of the small room into which the back door led, then called his companion.

_____

[9]It is clear, of course, that section 844 does not permit forcible entry in any case unless the person to be arrested is, or is reasonably believed to be, within the structure to be entered.

[10]The following language from a decision of the English Court of Common Pleas—set forth by us in *Rosales* (68 Cal.2d at p. 304, fn. 5)— merits repetition in the present context: ''The law of England, which is founded on reason, never authorises such outrageous acts as the breaking open every door and lock in a man's house without any declaration of the authority under which it is done. Such conduct must tend to create fear and dismay, and breaches of the peace by provoking resistance. This doctrine would not only be attended with great mischief to the persons against whom process is issued, but to other persons, also, since it must equally hold good in cases of process upon escape, where the party has taken refuge in the house of a stranger.'' (Heath, J., in *Ratcliffe* v. *Burton* (1802) 3 Bos. & Pul. 223, 230, 127 Eng.Rep. 123, 126-127.)

When the latter arrived at the rear of the house, the two officers entered the small room through the open door. They then decided to look for defendant in the rest of the building, and they knocked on the closed door which led from the small room to the main part of the building. Again they received no response, and they opened the door, which was unlocked, and went in. When they had satisfied themselves that defendant was not at home, they observed in plain sight certain chemicals and equipment commonly used for the manufacture of dangerous drugs. They then departed and, basing their allegations upon what they had observed in the house, obtained a search warrant which they subsequently executed.

The defendant in that case contended that the evidence obtained should have been suppressed on the ground that the search warrant was based upon observations obtained as a result of an illegal entry. The Court of Appeal, after holding that the officer's belief that defendant was in the building was reasonable, proceeded to consider the question whether a "breaking" had occurred within the meaning of section 844. It was the view of the court that no "breaking" had occurred but, recognizing that that conclusion might be subject to doubt under the decisions of this court in *People* v. *Rosales, supra*, 68 Cal.2d 299, 303, and *People* v. *Gastelo, supra*, 67 Cal.2d 586, 587-589 (see also *Sabbath* v. *United States, supra*, 391 U.S. 585, 589-590 [20 L.Ed.2d 828, 833-834, 88 S.Ct. 1755]), it held in a footnote that the statute had been complied with even if the entry constituted a "breaking." "The silence which greeted the officers' knocks dispensed with the necessity for any announcement of their purpose. (See *People* v. *Valles* (1961) 197 Cal.App.2d 362, 369 [17 Cal.Rptr. 204]; but cf. *People* v. *Stephens, supra*, 249 Cal. App.2d 113, 117 [57 Cal.Rptr. 66].)'' (263 Cal.App.2d at p. 186, fn. 3.) It was not expressly indicated by the court that "the silence which greeted the officers" also relieved them of announcing their *authority* (as opposed to their *purpose*) prior to entry, but the result reached requires that implication.

What we have said above makes it clear that we cannot agree with *Cox* to the extent that it stands for the proposition that substantial compliance with rules of announcement can be achieved in the absence of a statement of authority prior to entry. An unannounced entry of the kind involved in *Cox* is the very kind of entry which might well result in violent confrontations between householders and law enforcement

officers—and which rules of announcement are designed to discourage. To the extent indicated we disapprove of *People* v. *Cox.*

Turning to the facts of the case at bench we meet an even more pointed example of the kind of entry which the rule of announcement is designed to avoid. Here officers having probable cause to arrest one resident of a large house jointly occupied by other persons approached the house in the early hours of the morning, rapped on the door and, after waiting 10 to 15 seconds and receiving no response, broke[11] in at the door and moved swiftly into the residence in the manner of night raiders. All but one of the residents of the house were, quite understandably, in their beds (perhaps accounting for the failure to respond within 10 to 15 seconds), and the only exception, the person sought to be arrested, was reading at the kitchen table. Clearly these facts show a shocking and unjustified intrusion upon the privacy of the occupants. One can only imagine the events that might well have followed the entry if one of the occupants had had a weapon with which to resist unidentified intruders.

We hold that the entry in this case was not effected in literal or substantial compliance with the provisions of section 844 of the Penal Code. We further hold that such noncompliance was not excused due to exigent circumstances appearing on the instant record. (See *People* v. *Gastelo, supra,* 67 Cal.2d 586; *People* v. *DeSantiago* (1969) *ante,* pp. 18, 28-30 [76 Cal.Rptr. 809, 453 P.2d 353].) The search and seizure undertaken subsequent to such entry was therefore unreasonable and unlawful, and the motion pursuant to section 1538.5 of the Penal Code should have been granted.

In their petition for a writ of prohibition defendants prayed inter alia that respondent court be ordered to show cause "why it should not be absolutely restrained from taking any further proceedings against or making any other orders affecting Petitioners. . . ." We do not believe that the ultimate relief envisioned by this prayer is contemplated by section 1538.5 (see subd. (j)), and we therefore do not issue a peremptory writ of prohibition granting such relief. However, because it appears on the instant record that defendants' motion to suppress should have been granted, we issue an appropriate peremptory writ of mandate.

---

[11]The Attorney General does not argue that the entry involved no "breaking" within the meaning of section 844. Such a contention would clearly be without merit. (*People* v. *Rosales, supra,* 68 Cal.2d 299, 303.)

Let a peremptory writ of mandate issue directing the respondent court to grant petitioners' motion to suppress the evidence obtained as a result of the search of petitioners' premises conducted on June 14, 1968. The alternative writ of prohibition is discharged.

Traynor, C. J., McComb, J., Peters, J., Tobriner, J., Mosk, J., and Burke, J., concurred.