[Crim. No. 15502. Second Dist., Div. Two. Nov. 18, 1969.]

THE PEOPLE, Plaintiff and Respondent, v.
ARTHUR VASQUEZ, Defendant and Appellant.

## COUNSEL

Norman J. Kaplan for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Michael L. Abrams, Deputy Attorney General, for Plaintiff and Respondent.

## OPINION

**HERNDON, J.**—The determinative question on this appeal from the judgment convicting appellant of possession of heroin for purposes of sale is whether the seizure of the large supply of heroin which the arresting officers found in appellant's apartment was accomplished legally. In holding that this question must be answered affirmatively, we reject appellant's contention that the seizure should be held illegal because of the asserted failure of the officers, acting pursuant to the authority of a valid search warrant, to comply with the requirements of section 1531 of the Penal Code.[1]

---

[1]Section 1531 of the Penal Code, frequently referred to as the "counterpart" of section 844 of the same code, provides: "The officer may break open any outer or inner door or window of a house, or any part of a house, or anything therein, to execute the warrant, if, after notice of his authority and purpose, he is refused admittance."

## Summary of the Evidence

At approximately 3 p.m. on October 29, 1966, Officers Ridenour and Leeds of the Narcotics Division of the Los Angeles Police Department went to the location of an apartment house described in the search warrant which they intended to execute. This warrant, the validity of which is unquestioned, was issued upon the basis of a reliable informant's sufficiently corroborated reports to Officer Ridenour that appellant Arthur Vasquez was dealing in large quantities of heroin and that he had sold heroin to the informant at apartment 14 of the described apartment house.

On arriving at the apartment house the two officers contacted Mrs. Van Buren, the apartment house manager. Officer Ridenour testified that he asked Mrs. Van Buren to check the parking lot to see if there were any vehicles there associated with Vasquez. She returned and said, "Yes," and said she was going to have Vasquez move the car. When she knocked on the door of apartment 14 appellant Vasquez asked, "Who is it?" She replied, "Manager," whereupon Vasquez pulled back the drapes, looked out and then opened the sliding glass door. The two policemen were standing in the doorway, which was between the parking area and the apartment house courtyard. They were approximately 8 to 10 feet from the sliding glass door of apartment 14.

Mrs. Van Buren asked Vasquez to move his car. At that time the two policemen moved toward the sliding glass door. Sergeant Leeds had his badge in his hand and announced "Police officers." This occurred when the two officers were approximately 5 feet from Vasquez, outside his door. At that point Vasquez attempted to slide the glass door shut but the two officers moved forward, prevented him from closing the door and entered the apartment.

Whether the officers were in uniform or not does not appear, but the statement is made in the testimony that Officer Ridenour had his hand on his weapon, which was not drawn. And Mrs. Van Buren made the statement that Officer Ridenour had his hand on his gun but she did not think he had it out. In another part of the testimony reference is made to the gun holster.

Mrs. Van Buren testified that when the officers came to the apartment house they told her they would like to go into apartment 14 but that they didn't want to break in the door. She then said, "I didn't want them to. . . . I told them I would get the door open for them. . . ." She went to the carport area and found Vasquez's car improperly parked. She then went to apartment 14 and asked Vasquez to move the car. She also testified that before Officer Leeds entered Vasquez's apartment he displayed his badge and stated that he was a policeman.

To show the evidentiary refutation of appellant's assertion that Mrs. Van Buren's cooperation with the officers was coerced, we quote the following portion of her testimony: "Q. Did the officers ever request you specifically to get Mr. Vasquez out of the apartment? A. Asked me to get him out? Q. Yes. A. Not that I know of. I know they wanted to go in the apartment. Q. But they never asked you to— A. Not that I know of. I can't recall. Q. You volunteered to get the door open? A. Yes, I did. I volunteered myself. . . . Q. Just a couple more questions, Mrs. Van Buren. Actually, you volunteered because you didn't want any door broken down, isn't that correct? A. *Yes, and I was trying to help the law.* Q. They wanted to gain entry into the apartment. You suggested that you get Mr. Vasquez to come out, open the door so they wouldn't have to break it in? A. Yes." (Italics added.)

The following from the testimony of Officer Ridenour given in response to questions put to him by the deputy district attorney is quoted because of its significance in showing the presence of the exigent circumstances which justified the officers' entry in the manner indicated by the evidence to the extent that there was any lack of literal compliance with the requirements of section 1531: "By Mrs. Ham: Q. Was there any particular reason why you made entry in the manner you did at that particular time with a search warrant? A. Yes. Q. Could you tell us why? . . . A. One reason it was effected in this manner was the fact that the contraband that we were going to apprehend was narcotics named in the search warrant, narcotics being an easy item to dispose of; and we did it in this manner in fear that if we did not that contraband would be destroyed. Another reason was that on a prior occasion I had effected an arrest on Arthur Vasquez, and at this time he stated that if he had narcotics in the house he would have gotten rid of it. Also, on a prior arrest, I had knowledge—which I saw for myself—I saw a shotgun in Mr. Vasquez' home, which he stated he owned, and also I knew of a rifle.[2] Also entered in this manner because we had stated, 'Police officers.' My partner had a badge in his hand, which I saw; and at this time as we was moving toward the door, the door started to close, and if—I felt that if we did not enter in this manner by going through an open door, the door would be closed and locked and contraband would be destroyed."

### Substantial Compliance With Section 1531

In the recent decision of our Supreme Court in *Greven* v. *Superior Court*, 71 Cal.2d 287 [78 Cal.Rptr. 504, 455 P.2d 432], we find a complete exposition of the purpose, meaning and effect of sections 844 and 1531 of

---

[2]The evidence indicates that Officer Ridenour had arrested Vasquez in a different residence two or three months before the date of the arrest in this case.

the Penal Code. In the same decision there is a painstaking analysis of precedents dealing with the question whether there was substantial and sufficient compliance with the requirements of those sections in a variety of factual situations.

Among the earlier decisions referred to in *Greven* as cases in which the Supreme Court "has upheld [entries] which did not strictly comport with statutory requirements" but which were effected in a manner constituting "substantial compliance" are the following: *People* v. *Marshall,* 69 Cal.2d 51, 55-56 [69 Cal.Rptr. 585, 442 P.2d 665]; *People* v. *Cockrell,* 63 Cal.2d 659, 665-666 [47 Cal.Rptr. 788, 408 P.2d 116]; *People* v. *Carswell,* 51 Cal.2d 602, 607 [335 P.2d 99]; and *People* v. *Martin,* 45 Cal.2d 755, 762-763 [290 P.2d 855].

In distinguishing the cited cases from the case then at hand, the Supreme Court used the following language (71 Cal.2d at pp. 291-292): "It is true that in the cited cases this court has held that the requirements of section 844 were satisfied by 'substantial compliance' which fell short of strict literal compliance. In each of these cases, however, the officers prior to entry not only gave notice of their presence through knocking or some other means *but also* identified themselves as police officers. It was the second requirement of section 844, to wit, that the officers explain 'the purpose for which admittance was desired,' which we undertook to apply in light of the facts and circumstances of the case in order to determine whether 'substantial compliance' had been achieved in the absence of an express announcement of purpose. In *People* v. *Rosales, supra,* 68 Cal.2d 299 at page 302 [66 Cal.Rptr. 1, 437 P.2d 487], we recently restated the rationale of these cases: 'Such identification [i.e., identification as police officers without an express announcement of purpose] alone could constitute substantial compliance with section 844 only if the surrounding circumstances made the officers' purpose clear to the occupants or showed that a demand for admittance would be futile.' "

It will be noted that twice in the foregoing quotation the Supreme Court refers to "identification alone, without any mention of the future necessity of demand for admittance, as being sufficient to constitute substantial compliance where the officers' purpose is otherwise made clear. In *People* v. *Cockrell, supra,* 63 Cal.2d 659, 666, the court said: "Since it appeared that a sale of marijuana had been made in the Cockrells' home only minutes before the officers requested admittance, 'the purpose for which admittance' was 'desired' was reasonably apparent."

In *People* v. *Carswell, supra,* 51 Cal.2d 602, the officers had "knocked and announced that they were police officers but received no reply."

Apparently no demand for admittance was made but the ensuing entry was held not in violation of section 844.

■ Furthermore, and quite apart from the fact that the officers did not forcibly open the door but merely prevented the open door from being closed, the officers in the case at bench had announced their identity and appellant's immediate response in attempting to close the door rendered futile any effort on the part of the officers to effect a strict and literal compliance with section 1531. (Cf. *People* v. *Rosales,* 68 Cal.2d 299, 302 [66 Cal.Rptr. 1, 437 P.2d 489]; *People* v. *Lopez,* 269 Cal.App.2d 461, 468 [74 Cal.Rptr. 740]; and *People* v. *Limon,* 255 Cal.App.2d 519, 522 [63 Cal.Rptr. 91].

In view of appellant's contact with Officer Ridenour on the occasion of his previous arrest, and in view of appellant's possession of some $30,000 worth of heroin, it is obvious that there was abundant evidentiary basis for the trial court's implied finding that when appellant attempted to close the door, he not only knew the officers' identity but was well aware of the officers' purpose in seeking to gain entry into his apartment.

When the law, as stated in *Greven* v. *Superior Court, supra,* and in the precedents which that decision approves, is applied to the facts here presented, the conclusion is unavoidable that the requirements of substantial compliance were fully met in this case.

*Exigent Circumstances Justifying
Lack of Literal Compliance*

■ We agree with the trial court and with the argument of respondent that the record in this case establishes the presence of exigent circumstances more than sufficient to excuse any lack of literal compliance with the statutory provision under discussion. These circumstances include: (1) the fact that only three or four months previously Officer Ridenour had arrested appellant in his residence and found him in possession of a shotgun and a rifle; (2) the fact that at the time of this prior arrest appellant told the officer "that if he had narcotics in the house he would have gotten rid of it"; and (3) the fact that when the officer announced "police officers" and displayed his badge, appellant attempted to close the door.

In *People* v. *Newell,* 272 Cal.App.2d 638, 643 [77 Cal.Rptr. 771], a case presenting a similar factual situation, we invoked the rule stated in *People* v. *De Santiago,* 71 Cal.2d 18, 28-29 [76 Cal.Rptr. 809, 453 P.2d

353], that "where officers have obtained particular information which leads them to reasonably conclude that the occupants of an apartment or residence have specifically resolved to effect disposal in the event of police intrusion or have made specific preparations in that regard . . . an unannounced entry may be justified." The application of the foregoing rule to the facts of the instant case is self-evident.

Another case in which we dealt with the same issue in a similar factual setting in *People* v. *Lopez, supra,* 269 Cal.App.2d 461, and at page 466 we cited a long line of decisions holding that ruse or stratagem may properly be used by officers to gain entry in order to effect a lawful arrest. In this case, however, it is unnecessary to invoke this settled rule because here the officers' procedure did not involve any employment of ruse or stratagem. ■ The conduct of the officers in the present case as described by Officer Ridenour and as described in the corroborating testimony of Mrs. Van Buren was unassailable and subject to no valid criticism.

The following discussion of applicable precedents is found in *People* v. *De Santiago, supra,* 71 Cal.2d at pages 23-24: "In 1956 we held in the leading case of *People* v. *Maddox* (1956) 46 Cal.2d 301 [294 P.2d 6], that the requirements of section 844 are 'limited by the common law rules that compliance is not required if the officer's peril would have been increased or the arrest frustrated had he demanded entrance and stated his purpose.' (46 Cal.2d at p. 306.) In that case police officers, having probable cause to believe that the defendant was selling narcotics, went to his residence and knocked on the door. One of the officers heard a male voice say 'Wait a minute' and also heard the sound of retreating footsteps. He kicked the door open and apprehended the defendant. On the basis of these circumstances we concluded that 'When, as in this case, [the officer] had reasonable grounds to believe a felony is being committed and hears retreating footsteps, the conclusion that his peril would be increased or that the felon would escape if he demanded entrance and explained his purpose, is not unreasonable.' (46 Cal.2d at p. 306.)

"Subsequent pre-*Gastelo* decisions of this court which applied the so-called 'Maddox exceptions' invariably involved specific factual elements comparable to the 'retreating footsteps' in *Maddox*—that is, circumstances peculiar to the entry in question by which the officers could reasonably conclude that announcement would increase their own peril or frustrate the arrest. We summarized some of these decisions in *Gastelo* as follows: '. . . in *People* v. *Carillo* (1966) 64 Cal.2d 387 [50 Cal.Rptr. 185, 412 P.2d 377], entry followed a knock and observation of suspicious movements. In *People* v. *Smith* (1966) 63 Cal.2d 779 [48 Cal.Rptr. 382, 409

P.2d 222], and *People* v. *Gilbert* (1965) 63 Cal.2d 690 [47 Cal.Rptr. 909, 408 P.2d 365], the officers were in fresh pursuit of gun-wielding defendants. Similarly, in *People* v. *Hammond* (1960) 54 Cal.2d 846 [9 Cal.Rptr. 233, 357 P.2d 289], officers had cause to believe defendant had a gun and was under the influence of heroin at the time of arrest. (*People* v. *Gastelo, supra,* 67 Cal.2d at p. 588 [63 Cal.Rptr. 10, 432 P.2d 706]."

In view of the rules enunciated in the several decisions summarized in the foregoing quotation from *De Santiago,* it must be concluded that the circumstances of the instant case provided unusually strong legal support for the conduct of the police officers in executing the search warrant and for the ruling of the trial court which we now approve.

Appellant's statement to Officer Ridenour on the occasion of his previous arrest to the effect that "if he had narcotics in the house he would have gotten rid of it" constituted a reasonable basis for the officers' belief that appellant had "specifically resolved to effect disposal in the event of police intrusion." The fact that appellant was armed with a shotgun and a rifle at the time of his prior arrest some three months previously clearly constituted justification for the officers' apprehension that appellant, a known dealer in narcotics, might have rearmed himself with another dangerous weapon. And appellant's conduct in attempting to close the door when he observed the approach of the officers was reasonably interpreted by the officers and by the trial court as a furtive act constituting the first step in a preconceived plan to dispose of the contraband with the effect of thwarting the lawful purpose of the search warrant.

### Sufficiency of the Evidence of Possession

Appellant has advanced the secondary contention that "a conviction of possession of narcotics cannot be sustained where the state has shown only that narcotics were found in an apartment occupied by the appellant to which other people had easy access."

It is well settled, of course, that in a prosecution for unlawful possession of narcotics, it is incumbent upon the prosecution to present evidence from which the trier of the facts reasonably may infer and find that the accused had dominion and control over the contraband with knowledge of its presence and narcotic character. Mere proof of opportunity of access to a place where narcotics are found will not support a finding of unlawul possession. (*People* v. *Redrick,* 55 Cal.2d 282, 285 [10 Cal. Rptr. 823, 359 P.2d 255].)

It is equally well settled, however, that each of these essential elements may be proved by circumstantial evidence; that furtive action or other suspicious conduct on the part of the accused may be sufficient;

that exclusive possession of the premises in which the contraband was found need not be proved; and that immediate physical possession is not of the essence. The law controlling this aspect of the instant case is well stated in *People* v. *Hutchinson,* 71 Cal.2d 342 [78 Cal.Rptr. 196, 455 P.2d 132], a case in which the appellant had been convicted of the possession of marijuana.

In rejecting the same contention as that now advanced by appellant in the case at bench, the Supreme Court used the following language at page 345: "The evidence was sufficient to support the verdict. 'Unlawful possession of narcotics is established by proof (1) that the accused exercised dominion and control over the contraband, (2) that he had knowledge of its presence, and (3) that the accused had knowledge that the material was a narcotic.' (*People* v. *Groom* (1964) 60 Cal.2d 694, 696 [36 Cal.Rptr. 327, 388 P.2d 359].) When contraband is found in a place to which a defendant and others have access and over which none has exclusive control 'no sharp line can be drawn to distinguish the congeries of facts which will and that which will not constitute sufficient evidence of a defendant's knowledge of the presence of a narcotic. . . .' (*People* v. *Redrick* (1961) 55 Cal.2d 282, 287 [10 Cal.Rptr. 823, 359 P.2d 255].)"

In *Hutchinson* the court further observed that if the evidence in that case had shown only that two boxes containing marijuana were found hidden under a bed in a bedroom shared by defendant and his three brothers and to which other guests also had access, the applicable rule would be that "proof of opportunity of access to a place where narcotics are found, without more, will not support a finding of unlawful possession." (Citing *People* v. *Redrick, supra.*) But, said the court, there was in that case the additional evidence that defendant had fled from his home when his mother confronted him with the marijuana, demanded an explanation and threatened to call the police.

■ As we shall show, the "congeries of facts" established by the evidence in the instant case was even stronger and constituted more than sufficient circumstantial evidence of appellant's possession of the contraband. His familiarity with narcotics may be inferred from his statement to Officer Ridenour at the time of his previous arrest.

As has been recited, the officers entered apartment 14 despite appellant's attempt to close the door in their faces. As Sergeant Leeds entered, appellant faced him with his arms extended forward but the officer "pushed him" whereupon "he took a couple of steps backward and then sat down on the couch." There was another man present in the apartment who arose

from a davenport and started to run toward the kitchen before he was restrained.

After explaining that he had a search warrant and after handling appellant a copy of the warrant, the officers proceeded to search the apartment. They found in a waste paper basket a brown paper bag which gave off the odor of acetic acid, a substance used in the preparation of heroin. On an end table adjacent to the divan in the living room they found a roach an inch and a quarter in length containing marijuana. Behind the screen of an air conditioner in the living room they found condoms containing 187 grams of heroin referred to as having a value of $30,000.

Mrs. Van Buren, the apartment house manager, testified that she first rented apartment No. 4 to appellant and that shortly thereafter she rented apartment No. 14 to one Robert Burnell who paid the monthly rent only for the first month. Both appellant and Burnell moved in and occupied apartment 14. However, except for the first month, appellant made each monthly rent payment thereafter for a matter of months prior to October 29, 1966, the date of the search and seizure involved in this case.

It appears from Mrs. Van Buren's testimony that after appellant began paying the rent on apartment 14, he occupied and used it but that he also continued to pay the rent on apartment No. 4 which he shared with his sister. It is reasonably clear from the testimony that from the time appellant began paying the rent and receiving the rent receipts and for a period of at least two months prior to October 29, 1966, he was the tenant in possession and control of apartment 14.

The presence in the apartment of the large supply of heroin and the recent use of acetic acid as evidenced by the brown paper bag found in the waste basket combine to support the reasonable inference that heroin was being processed in the apartment. The fact that appellant had frequent visitors is not inconsistent with the theory that he was engaged in the business of processing and selling heroin.

In the nature of things it would appear most improbable that anyone other than a tenant in possession would hide $30,000 worth of heroin in an air conditioner of a residential apartment. It seems inconceivable and contrary to every dictate of reason to suppose that a possessor of such a quantity of heroin other than appellant would have concealed it in appellant's apartment without his knowledge.

Added to the probabilities and improbabilities inherent in all these

circumstances is the evidence of appellant's furtive conduct in attempting to block the officers' entry into the apartment.

The judgment is affirmed.

Roth, P.J., and Fleming, J., concurred.

A petition for a rehearing was denied December 10, 1969, and appellant's petition for a hearing by the Supreme Court was denied January 14, 1970.