17 Cal.App.3d 463 (1971)
95 Cal. Rptr. 121
THE PEOPLE, Plaintiff and Respondent,
v.
CHARLES EDWARD JAMES, Defendant and Appellant.
Docket No. 18618.
Court of Appeals of California, Second District, Division One.
May 12, 1971.
*465 COUNSEL
Terry M. Shagin, under appointment by the Court of Appeal, for Defendant and Appellant.
Evelle J. Younger, Attorney General, William E. James, Assistant Attorney General, and Ellen B. Friedman, Deputy Attorney General, for Plaintiff and Respondent.
OPINION
LILLIE, J.
Defendant and Virgil Smith were charged with possession of a shotgun with a barrel less than 18 inches (§ 12020, Pen. Code). Motions under sections 1538.5 and 995, Penal Code, were denied. The cause was submitted for trial on the transcript of the testimony taken at the preliminary hearing, and defendant was found guilty as charged. He appeals from orders denying his motions. Since the orders are not separately appealable (§ 1237.5, Pen. Code), we treat the notice of appeal as one from the judgment which permits review of such orders. (See People v. Jasso, 2 Cal. App.3d 955, 962 [82 Cal. Rptr. 229].)
On October 19, 1969, Officers Saitman and his partner, in uniform and in a black and white police vehicle, responded to a "Silent Burglar Alarm" at 1807 East 103d Street. While there Officer Saitman noticed that across the street the front door of 1810 East 103d Street, the Black Panther headquarters, was open. Through the open door he saw defendant who the officers believed matched the description of a suspect wanted for the shooting of a police officer the night before; the description he had received was of a male Negro, approximately 19 to 20 years old, 5' 8" to 5' 10", wearing a green Army type jacket and Russian Cossack type hat. Officer Saitman had been one of those who responded to the original shooting call the night before. 1810 East 103d Street (Black Panther headquarters) was thus described by the officer: "the whole block is all business buildings. 1810 is just a normal type business building, has a front door leading to the sidewalk. The door was open." Inside the building was a small room 10 by 15 feet with a partition leading to a larger back room. *466 The officer did not know whether the building was open to the public but he did know it was not open to the police. After parking approximately 75 feet west of the Black Panther headquarters, he and his partner in uniform proceeded to walk up to 1810 East 103d Street, then entered the building through the front door which was "completely open, all the way" and to which there was no screen door and no hallway; as they entered he told defendant, who was either seated on or next to a desk, that he matched the description of a suspect wanted in the shooting of Officer Moen; codefendant Smith, seated at a desk directly behind the open door, said, "You pigs can't come in here"; Officer Davis told him they were there because defendant matched the description of the suspect and that he (defendant) was under arrest. Smith then got up, walked to the partition, reached behind it and said, "If you come back here there is liable to be some shooting"; Smith appeared to have his hand on something and when he retracted it the officer heard something bang against the partition. At this point defendant walked to the partition followed by Officer Saitman who saw defendant grab a 12-gauge sawed-off shotgun, the slide action of which defendant was holding as he pulled the gun up to his body. As the officer started to follow defendant he told him to stop, that he was under arrest but defendant kept walking; the officer grabbed the gun out of defendant's hands. Both men were then placed under arrest. At the time the officers entered the premises only Smith and defendant were in the room but while they were there four female Negroes walked in.
(1a) There is no merit to appellant's claim that the entry of the premises by the officers was in violation of section 844, Penal Code,[1] and the admission of evidence obtained therein was prejudicial error.
The premises were located in a business area; the entire block consisted of business buildings and the Black Panther headquarters were in "just a normal type business building" with a front door leading to the sidewalk. The door had no screen and it led directly into the room where there were desks and chairs. It was this door that was wide open and through which the officers entered in broad daylight. Obviously the premises were open for business because while the officers were there four females walked in without knocking. Duke v. Superior Court, 1 Cal.3d 314 [82 Cal. Rptr. 348, 461 P.2d 628], describes the purposes and policies underlying section 844, as four-fold: "(1) the protection of the privacy of *467 the individual in his home (see Sabbath v. United States, supra, 391 U.S. 585, 589 [20 L.Ed.2d 828, 833, 88 S.Ct. 1755]; Miller v. United States, supra, 357 U.S. 301, 313 [2 L.Ed.2d 1332, 1340, 78 S.Ct. 1190]; Greven v. Superior Court, supra, 71 Cal.2d 287, 292 [78 Cal. Rptr. 504, 455 P.2d 432]; People v. Maddux (1956) 46 Cal.2d 301, 306 [294 P.2d 6]); (2) the protection of innocent persons who may also be present on the premises where an arrest is made (see People v. Rosales, supra, 68 Cal.2d 299, 304 [66 Cal. Rptr. 1, 437 P.2d 489]); (3) the prevention of situations which are conducive to violent confrontations between the occupant and individuals who enter his home without proper notice (Greven v. Superior Court, supra, 71 Cal.2d 287, 292-293; see Sabbath v. United States, supra, 391 U.S. 585, 589; Miller v. United States, supra, 357 U.S. 301, 313, fn. 12 [2 L.Ed.2d 1332, 1340, 78 S.Ct. 1190]; People v. Rosales, supra, 68 Cal.2d 299, 304); and (4) the protection of police who might be injured by a startled and fearful householder." (Italics added; p. 321.) (2) Section 844 was designed "to protect the fundamental right deeply rooted in our heritage that a person cannot lawfully be arrested in his home by officers breaking in unless the officers first give him notice of their authority and purpose." (Italics added; People v. Beamon, 268 Cal. App.2d 61, 63 [73 Cal. Rptr. 604].) The court in People v. Rosales, 68 Cal.2d 299 [66 Cal. Rptr. 1, 437 P.2d 489], quotes the following from Miller v. United States (1958) 357 U.S. 301, 313-314 [2 L.Ed.2d 1332, 1340-1341, 78 S.Ct. 1190], at pages 304-305: "`Every householder, the good and the bad, the guilty and the innocent, is entitled to the protection designed to secure the common interest against unlawful invasion of the house. The petitioner could not be lawfully arrested in his home by officers breaking in without first giving him notice of their authority and purpose.'" (Italics added.) Thus, the section has been held to be inapplicable to a structure which was a house, but abandoned and clearly "not a home" (People v. Sanchez, 2 Cal. App.3d 467, 472-473 [82 Cal. Rptr. 582]) and to an abandoned garage to the rear of an abandoned dwelling. (People v. Medina, 265 Cal. App.2d 703, 707 [71 Cal. Rptr. 586].) Business premises the door to which is kept open during daylight hours and in and out of which people freely pass are not those contemplated by section 844 which specifically refers to "the house in which the person to be arrested is." The premises do not constitute a "house" within the meaning of section 844, nor are they entitled to the protection designed to secure the householder in his home.
(1b) In any case, there was substantial compliance with section 844. (Greven v. Superior Court, 71 Cal.2d 287, 292 [78 Cal. Rptr. 504, 455 P.2d 432]; People v. Marshall, 69 Cal.2d 51, 55 [69 Cal. Rptr. 585, 442 P.2d 665]; People v. Rosales, 68 Cal.2d 299, 303 [66 Cal. Rptr. 1, 437 *468 P.2d 489]; People v. Superior Court, 274 Cal. App.2d 578, 580 [79 Cal. Rptr. 55].) Appellant concedes that since the officers were in uniform and the front door was open they "fulfilled the first two criteria as set out in People v. Superior Court [276 Cal. App.2d 581, 588 (81 Cal. Rptr. 42)]; that of identifying themselves and demanding entry" but argues that they did not state why they sought entry and thereby violated section 844. The approach of the uniformed officers to the premises was visible through the wide open door to those inside the Black Panther headquarters who, in turn, were visible to the officers. As they entered, the officers, in fact, did announce to defendant their purpose  that he matched the description of a suspect wanted in the shooting of Officer Moen and was under arrest  but it is clear from the response of Smith, "You pigs can't come in here," and of defendant in attempting to arm himself with a shotgun, that it would have been futile for them to have stood outside the open door to announce their purpose and then enter. While in People v. Rosales, 68 Cal.2d 299 [66 Cal. Rptr. 1, 437 P.2d 489], police identification without demand for entry or announcement of purpose did not there constitute substantial compliance, the court said "That section [844, Pen. Code] requires that an officer explain his purpose before demanding admittance, not merely that he identify himself as an officer. `The burden of making an express announcement [of purpose] is certainly slight.' (Miller v. United States (1958) 357 U.S. 301, 309 [2 L.Ed.2d 1332, 1338, 78 S.Ct. 1190].)
"Such identification alone could constitute substantial compliance with section 844 only if the surrounding circumstances made the officers' purpose clear to the occupants or showed that a demand for admittance would be futile." (P. 302; see also People v. Superior Court, 274 Cal. App.2d 578, 580 [79 Cal. Rptr. 55].) It is obvious here that at the outset the officers' identification and purpose were clear to those inside the Black Panther headquarters, and that a demand for admittance would have been futile.
(3) As to the admissibility of the sawed-off shotgun, the testimony of Officer Saitman established that all of the events leading up to the discovery of the weapon occurred after defendant was told he was under arrest and that the weapon was not obtained as the result of a search. There was no search; it was the action of Smith and defendant after the latter was told he was under arrest that attracted the attention of the officers to the weapon. Moreover, it appeared that the defendant was preparing to use it; the officer was justified in seizing the gun. It hardly can be argued successfully that but for the entrance of the officers and their attempt to arrest defendant he would not have been forced to flee and/or arm himself, because defendant's independent intervening act of free will broke the causal chain between the asserted illegal police conduct and *469 the seizure of the gun. (People v. Superior Court, 71 Cal.2d 265, 271-272 [78 Cal. Rptr. 210, 455 P.2d 146]; People v. Johnson, 70 Cal.2d 541, 546, 548 [75 Cal. Rptr. 401, 450 P.2d 865].) Defendant did not run and arm himself because the officers entered the premises but because he did not want to be taken into custody.
The judgment is affirmed.
Wood, P.J., and Thompson, J., concurred.
NOTES
[1] Section 844, Penal Code, provides: "To make an arrest, ... a peace officer, may break open the door or window of the house in which the person to be arrested is, or in which they have reasonable grounds for believing him to be, after having demanded admittance and explained the purpose for which admittance is desired."