Filed 6/24/15  P. v. Nava CA2/6

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent.<br><br>v.<br><br>JOSEPH RODERICK NAVA,<br><br>    Defendant and Appellant. | 2d Crim. No. B255125<br>(Super. Ct. Nos. 2013030467, 2011008085,<br>2010006776)<br>(Ventura County) |

This appeal by Joseph Roderick Nava involves three separate cases and the apportionment of custody time credits among them.

In case No. 2010006776 (2010 case), appellant was convicted of sale of a controlled substance (Health & Saf. Code, § 11379, subd. (a)).  He was ordered to serve 240 days in jail and placed on probation for 36 months.

In case No. 2011008085 (2011 case), appellant was convicted of transporting a controlled substance (Health & Saf. Code, § 11379).  He admitted to having suffered a prior conviction (*id.* at § 11370.2), and to violating probation in the 2010 case.  He was placed on probation in both cases.

In case No. 2013030467 (current case), appellant was convicted by jury of possession of methamphetamine (count 1) and possession of heroin (count 2).  (Health & Saf. Code, §§ 11377, subd. (a), 11350, subd. (a).)  The trial court also found that he was in violation of probation in the 2010 and 2011 cases.

The trial court sentenced appellant to a total term of seven years eight months, with four years eight months to be served in county jail, and the remaining three years to be served on mandatory supervision. The sentence was calculated as follows: a term of one year (365 days) in the 2010 case, a consecutive term of six years in the 2011 case, and a consecutive term of eight months on count 1 in the current case, to be served concurrently with a term of eight months on count 2. The court awarded appellant 521 days of presentence credit (261 actual; 260 conduct) in the 2010 case, 147 days (99 actual; 48 conduct) in the 2011 case, and 252 days (126 actual; 126 conduct) in the current case.

Appellant contends the evidence is insufficient to support his conviction for possession of methamphetamine and heroin in the current case. He further asserts that since he was in custody for both the 2010 and 2011 cases when he earned the 521 days of presentence credit allocated to the 356-day sentence in the 2010 case, the trial court should have allocated it to the six-year sentence in the 2011 case. By allotting it to the case with the shorter sentence, the court allowed 156 days of "'dead time,' that is, time spent in custody for which [appellant] receive[d] no benefit." (*In re Marquez* (2003) 30 Cal.4th 14, 20 (*Marquez*).) We conclude this was error and that those days should be credited against his sentence in the 2011 case. We shall modify the judgment accordingly and otherwise affirm.[1]

FACTS

Around 1:00 a.m. on October 1, 2013, Ventura Police Officers Miguel Martinez and Cody Uebelhardt were on foot patrol near a motel when they noticed a taxi driven by Jose Flores with appellant and two women inside. Martinez recognized appellant, who was on probation, and performed a records check on him. Uebelhardt also recognized him and said, "Hey, Nava," as the taxi passed by. The

---

[1] In his opening brief, appellant argued that the trial court's order imposing a presentence investigation fee must be stricken because the evidence did not support his ability to pay that fee. In his reply brief, appellant concedes the argument is foreclosed under *People v. Trujillo* (2015) 60 Cal.4th 850, 853, because he neither objected to the fee in the trial court nor asserted an inability to pay it.

officers got into their patrol cars and conducted a traffic stop. They instructed the occupants to put up their hands and they all complied. Appellant, however, reached down under the front passenger seat and put his hand back up only after being repeatedly ordered to do so. No one else in the cab moved during this time.

After the officers removed everyone from the vehicle, they found three baggies on the floor where appellant's feet had been. The baggies contained methamphetamine and heroin in quantities suitable for consumption. Officer Brian Hartson, who had arrived to assist, saw appellant kick his foot at something on the floor just before he was pulled out of the taxi. Martinez noticed that appellant's fly was unzipped.

Flores, an unlicensed taxi driver, testified that he had known appellant for years and had given him rides in the past. He picked up appellant and the two women and drove them to the motel. Flores did not observe any sexual conduct between appellant and the women. He booked a room for appellant in his own name to help appellant avoid the police. After reserving the room, Flores noticed the police officers in the parking lot. Flores got in the car and went to a gas station to elude them. A few minutes later, Flores drove back to the motel, but when he saw the officers were still there, he started to drive away again. When the officers followed and ordered him to stop, he complied. Flores testified he did not know about the drugs found in his taxi. He said that other passengers had left behind drugs in the past, but not in such a large amount.

Appellant testified on his own behalf. He acknowledged a 2008 conviction for making threats, 2010 convictions for selling methamphetamine, theft and giving false information to police, and a 2012 conviction for receiving stolen property. He admitted using methamphetamine and heroin in the last year. Appellant stated that Flores was driving him and the two women to the motel so that appellant could have sex with the women. When Flores exited the motel lot to avoid encountering the police, he did so at appellant's direction.

3

Appellant testified that the entire time they were in the car, one of the women was performing oral sex on appellant, who had lowered his shorts. She stopped periodically to prevent Flores from noticing. When appellant realized Flores was complying with the police order, he told the woman to stop and pulled his shorts back up. Appellant raised his hands as directed by the officers, but then dropped his hand to adjust his fly. He said he slid his foot forward when being removed from the car, but only to adjust his balance.

Appellant denied that the drugs were his or that he had noticed them in the car. As to how he had overlooked the baggies, he explained, "I would never rummage through someone else's car out of common decency and common respect." He did not observe the women or Flores reaching into the area where the drugs were found.

DISCUSSION

*Sufficiency of the Evidence*

Appellant contends that there was insufficient evidence that he possessed the drugs found in the taxi. We disagree.

In reviewing an insufficient evidence claim, we consider the entire record in the light most favorable to the judgment to determine whether it discloses substantial evidence such that a reasonable jury could find the defendant guilty beyond a reasonable doubt. (*People v. Elliot* (2005) 37 Cal.4th 453, 466.) We presume the existence of every fact supporting the judgment that the jury reasonably could deduce from the evidence, and a judgment will be reversed only if there is no substantial evidence to support the verdict under any hypothesis. (*People v. Bolin* (1998) 18 Cal.4th 297, 331; *People v. Quintero* (2006) 135 Cal.App.4th 1152, 1162.) On review, we may not substitute our judgment for that of the jury, reweigh the evidence, or reevaluate the credibility of witnesses. (*People v. Ochoa* (1993) 6 Cal.4th 1199, 1206.) "Absent exceptions not pertinent here, 'the testimony of a single witness is sufficient for the proof of any fact.'" (*People v. Avila* (2009) 46 Cal.4th 680, 703.)

"The essential elements of possession of a controlled substance are 'dominion and control of the substance in a quantity usable for consumption or sale, with

4

knowledge of its presence and of its restricted dangerous drug character. Each of these elements may be established circumstantially.'" (*People v. Palaschak* (1995) 9 Cal.4th 1236, 1242.) Furtive action or other suspicious conduct on the part of the accused may be sufficient. (*People v. Vasquez* (1969) 1 Cal.App.3d 769, 777-778.) Exclusive possession of the area where the contraband was found need not be proved, and immediate physical possession is not required. (*Ibid.*)

In *People v. Hutchinson* (1969) 71 Cal.2d 342 (*Hutchinson*), the mother of the teenage defendant discovered marijuana in a bedroom shared with his three brothers. (*Id.* at p. 344.) Two of the brothers were away from home, but the night before the discovery, some of their friends changed clothes in the room. (*Id.* at p. 345.) The court determined that if the evidence had shown only that the marijuana was hidden in the shared room, a finding of unlawful possession would not be supported. (*Id.* at pp. 345-346.) But the fact that the defendant fled when his mother threatened to call the police was sufficient additional evidence from which "[t]he jury could reasonably infer that his flight reflected consciousness of guilt and that he therefore knowingly possessed the marijuana found in the bedroom and closet." (*Id.* at p. 346.)

Thus, in *Hutchinson*, the evidence was sufficient to establish possession where (1) the contraband was located in a place to which persons in addition to the defendant had access, and (2) there was conduct by the defendant indicating consciousness of guilt. (*Hutchinson, supra,* 71 Cal.2d at pp. 345-346; see *People v. Robbins* (1964) 225 Cal.App.2d 177, 184 ["defendant was observed to have repeatedly bent over in the immediate vicinity where a satchel containing narcotics was found secreted, thus supporting the inference of his possession of the narcotics"]; *People v. Taylor* (1984) 151 Cal.App.3d 432, 436 [attempt to avoid capture indicated possession].)

Here, appellant asserts that his mere presence in the car was insufficient to establish his guilt. But appellant was not merely present when the drugs were found. Of the four occupants, he was the only one to ignore the officers' orders to keep hands up. He sat close to where the drugs were found and also moved his hand and foot in a manner indicating an attempt to hide them. His furtive actions, along with his instructions to

Flores to twice leave the motel to avoid the police, were sufficient to support the convictions.  (See *Hutchinson, supra,* 71 Cal.2d at pp. 345-346; *People v. Taylor, supra,* 151 Cal.App.3d at p. 436.)

Finally, the jury was entitled to reject as implausible appellant's claim that he was simply trying to fasten his pants after an extended session of oral sex that went unobserved by the taxi driver.  (See *People v. Showers* (1968) 68 Cal.2d 639, 643 ["False statements regarding incriminating circumstances constitute evidence which may support an inference of consciousness of guilt"].)  During sentencing, the trial court described appellant's testimony as unpersuasive, stating:  "I didn't believe anything that [he] said during the trial really, and it's pretty clear that the jury didn't either."

*Allocation of Presentence Credits*

Appellant does not challenge the calculation of his presentence credits.  He contests the allocation of the credits among the three cases.  He asserts the trial court erred by allotting 521 days of credit to the 365-day sentence in the 2010 case instead of to the six-year sentence in the 2011 case.  The People do not dispute that between 2011 and 2012 appellant was in custody for 521 days in connection with both cases and that allocation of those days to the 2010 case leaves an excess of 156 days.  Appellant claims he is entitled to credit for that excess in the 2011 case.  We agree.

Penal Code section 2900.5[2] governs the award of presentence custody credit.  Subdivision (a) of that section provides that "[i]n all felony and misdemeanor convictions, either by plea or by verdict, when the defendant has been in custody, . . . all days of custody of the defendant, including days . . . credited to the period of confinement pursuant to Section 4019, . . . shall be credited upon his or her term of imprisonment . . . .  If the total number of days in custody exceeds the number of days of the term of imprisonment to be imposed, the entire term of imprisonment shall be deemed to have been served."  (§ 2900.5, subd. (a).)  Subdivision (b) states that "credit shall be given only where the custody to be credited is attributable to proceedings related to the same

_____

[2] All further statutory references are to the Penal Code.

conduct for which the defendant has been convicted. Credit shall be given only once for a single period of custody attributable to multiple offenses for which a consecutive sentence is imposed." (*Id.* at subd. (b).) As our high court has noted, "'. . . subdivision (b), is "difficult to interpret and apply." . . .'" (*Marquez, supra,* 30 Cal.4th at p. 19.)

Appellant's claim to the excess presentence credit is based upon *Marquez, People v. Gonzalez* (2006) 138 Cal.App.4th 246 (*Gonzalez*) and *People v. Torres* (2012) 212 Cal.App.4th 440 (*Torres*). In *Marquez*, the defendant, who was out on bail (first case), was arrested again (second case) and taken into custody in another county. He was convicted of both crimes and sentenced. The time he spent in jail from his second arrest until he was sentenced in the second case was credited to the prison term in the second case. After the conviction in the second case was reversed, the Supreme Court agreed that his presentence credit should apply to the first case. (*Marquez, supra,* 30 Cal.4th at p. 20.) It concluded that the defendant's custody had been attributable to both charges until the conviction in the second case was reversed. At that point, the custody was properly characterized as being attributable to the first case. (*Ibid.*) "To deny [the defendant] credit for his time spent in custody . . . would render this period 'dead time,' that is, time spent in custody for which he receives no benefit." (*Ibid.*)

In *Gonzalez,* the defendant pled guilty to domestic violence and was placed on probation. He reoffended during the probationary period and was charged with auto theft and gun possession. (*Gonzalez, supra,* 138 Cal.App.4th at p. 248.) While in custody, awaiting trial on the auto theft/gun charges, he was charged with assaulting an inmate. The defendant was convicted of the auto theft/gun charges, pled no contest in the assault case and admitted the probation violation. (*Id.* at pp. 249-250.) The trial court allocated custody credit for the time served between the defendant's arrest in the auto theft/gun case and the date of the assault solely to the domestic violence case. As a result, the total presentence credit allocated to that case exceeded the imposed sentence. (*Id.* at pp. 250-251, 254.)

*Gonzalez* held that the custody credit could be applied to the auto theft/gun case even though it was not the sole reason for the presentence confinement. (*Gonzalez,*

7

*supra,* 138 Cal.App.4th at p. 252.)  Noting that the custody could be attributed to "'multiple, unrelated causes,'" the court reasoned that the prohibition in section 2900.5, subdivision (b) against duplicate credits would not be violated because the defendant did not seek duplicate credits for the period of confinement.  (*Ibid.*)  It explained:  "[T]he choice in this case is not between awarding credit once or awarding it twice.  The credits for the [relevant] period of incarceration were only awarded against a single case, the domestic violence case.  However, once the few days of custody left to complete the sentence in the domestic violence action were credited to defendant, the remaining custodial time should have been characterized as solely attributable to the auto theft and gun case and allocated accordingly.  Otherwise the vast majority of the time served during the [relevant] period of incarceration would become 'dead time' that was not attributable to any case . . . ."  (*Id.* at p. 254.)

In *Torres,* the defendant pled guilty to new charges while he was serving a two-year sentence in another case.  Pursuant to a plea agreement, the sentence in the earlier case was reduced to eight months, resulting in completion of that sentence well before the defendant was sentenced in the second case.  (*Torres, supra,* 212 Cal.App.4th at p. 445.)  Citing *Gonzalez,* the court held that once the modified earlier sentence was fulfilled, the remaining custodial time awarded toward that sentence should have been characterized as solely attributable to the second case.  (*Id.* at p. 447.)

The People concede that "[i]n the proper case, credits may be allotted in [the] manner" described in *Gonzalez* and *Torres.*  They argue that because the trial court stated in its sentencing minute order *in the current case* that "excess credits are not to be applied towards [the 2011 or 2010 case]," the court intended to limit allocation of the 521 days of credit to just the 2010 case.  The trial court did not address the issue at sentencing, and it is not clear what the court meant by "excess credits," particularly since the minute order references only the 252 days of credit awarded in the current case.  In any event, the People cite no authority suggesting the court may allow "dead time" where, as here, the presentence credit is attributable to both a case in which the sentence has been exhausted (2010 case) and a case in which time remains to be served (2011

8

case).  (See *Gonzalez, supra,* 138 Cal.App.4th at p. 254; *Torres, supra,* 212 Cal.App.4th at p. 447.)

The People contend that even if the trial court did err in allocating the 521 days to the 2010 case, section 1237.1 requires that the matter be addressed first in the trial court.  Section 1237.1 states that "[n]o appeal shall be taken by the defendant from a judgment of conviction on the ground of an error in the calculation of presentence custody credits, unless the defendant first presents the claim in the trial court at the time of sentencing, or if the error is not discovered until after sentencing, the defendant first makes a motion for correction of the record in the trial court."  Appellant concedes that he did not raise the issue in the trial court; but where, as in this case, there are other appellate issues to be decided, we may resolve the presentence credit issue in the interest of judicial economy.  (*People v. Acosta* (1996) 48 Cal.App.4th 411, 427; accord, *People v. Jones* (2000) 82 Cal.App.4th 485, 493.)  Moreover, "[a] sentence that fails to award legally mandated custody credit is unauthorized and may be corrected whenever discovered."  (*People v. Taylor* (2004) 119 Cal.App.4th 628, 647; see *People v. Chilelli* (2014) 225 Cal.App.4th 581, 591.)

The record reflects that the 521 days of credit awarded to appellant in the 2010 case exceeded the 365-day jail term in that case by 156 days.  As in *Gonzalez* and *Torres,* those excess days of credit should have been "characterized as solely attributable to the [2011] case and allocated accordingly."  (*Gonzalez, supra,* 138 Cal.App.4th at p. 254; *Torres, supra,* 212 Cal.App.4th at pp. 446-447.)  Appellant therefore is entitled to 156 days of credit against his six-year sentence in that case, in addition to the 147 days already awarded.

## DISPOSITION

The judgment is modified to award appellant 156 days of additional presentence credit against his sentence in case No. 2011008085.  The trial court shall

9

amend the abstract of judgment accordingly and transmit a certified copy to the Ventura County Jail.  As modified, the judgment is affirmed.

NOT TO BE PUBLISHED.


                                    PERREN, J.
We concur:


GILBERT, P. J.


YEGAN, J.

David M. Hirsch, Judge

Superior Court County of Ventura

_____

William Paul Melcher, under appointment by the Court of Appeal, for Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, James William Bilderback II, Supervising Deputy Attorney General, Marc A. Kohm, Deputy Attorney General, for Respondent.