[Crim. No. 7456. First Dist., Div. One. Dec. 9, 1969.]

THE PEOPLE, Plaintiff and Respondent, v.
RICHARD SANCHEZ, Defendant and Appellant.

## COUNSEL

Richard C. Turrone, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, Robert R. Granucci and Joyce F. Nedde, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**MOLINARI, P. J.**—Defendant Richard Sanchez appeals from a judgment entered on a jury verdict finding him guilty of violating section 11500 of the Health and Safety Code (possession of a narcotic: heroin).[1] He raises four contentions: (1) that the trial court committed error in denying his motion made pursuant to Penal Code section 1538.5 on the basis that he was arrested in violation of the provisions of section 844 of the Penal Code[2] providing when a door of a house may be broken in order to make an arrest; (2) that he was denied the right to counsel because defense counsel represented defendants with conflicting interests; (3) his 1964 felony offense was improperly charged as a prior conviction; and (4) the language and method used to allege the prior felony offense constituted prejudicial error. We have examined these contentions and find them to be without merit.

[1]The appeal of codefendant Lazaro Deanda has been dismissed.
[2]Unless otherwise indicated, all statutory references hereinafter made are to the Penal Code.

## The Arrest

On April 5, 1968, at about 12:50 p.m., the San Jose Police Department received a telephone call from Mrs. Gertrude Wilson, who lived at 564 Minor Street, that she believed there were prowlers in the house next door at 560 Minor Street. The latter building was unoccupied and had been abandoned since October or November 1967. Mrs. Wilson had telephoned the police on several previous occasions concerning prowlers in the unoccupied house. On this particular day Mrs. Wilson heard the noise of people walking inside 560 Minor Street, and she observed a man at a window of these premises. She also observed an old tan station wagon parked in front of these premises.

At about 12:50 p.m. Officer Dennis McKenzie, who was patrolling in a marked police car, received a call from the police dispatcher to investigate a report of "prowlers" at 560 Minor Street. McKenzie knew that this house was unoccupied and abandoned because it was in an area where a large number of homes had been condemned for freeway construction. Within two to five minutes after receiving the call McKenzie arrived at 560 Minor Street. He tried to open the front door but was unable to do so. He then walked around the side of the house. While doing so he heard voices inside the house and observed figures through a side window. He was unable to hear what was being said nor could he identify the figures.

McKenzie proceeded to the rear of the house and entered the building through an unlocked screen door onto the back porch area. He then walked into the kitchen which did not have a door, and proceeded into a small utility room in which there were no furnishings. This room, which had only one window, was the room in which he had previously observed the figures from the outside. The lower part of the window was raised. McKenzie did not knock or announce his presence at any time prior to his entry into the utility room.

Upon entering the utility room McKenzie observed two men and a woman who was holding a child. A man, identified as defendant, was squatting down with his right arm flexed, about five feet from McKenzie. Defendant's left hand, which appeared to be holding something, was in the crevice of his right arm. The other man, later identified as codefendant Lazaro Deanda, was partially concealed a few feet behind defendant in a stooped-down position. McKenzie observed a bent spoon and medicine dropper with a needle at the end of it at defendant's feet. He felt that there was a possibility of a narcotics violation, so he drew his service revolver and ordered defendants to raise their hands and to stand against the wall. As he gave this order defendants appeared to move towards the open window and

McKenzie then saw objects flying out of the window. McKenzie then ordered defendants to place their hands against the wall and they did so.

A search upon the arrival of other police officers uncovered narcotic paraphernalia about the room in several places, and a search of the outside area below the open window uncovered other possible narcotic equipment along with a folded paper which contained heroin. Defendants were then taken to the police station.

■ Adverting to defendant's contention that the trial court should have granted his pretrial motion for suppression of the evidence pursuant to section 1538.5 because there was a violation of section 844, we observe that an entry of a house in violation of section 844 renders any following search and seizure unreasonable within the meaning of the Fourth Amendment. (*Greven* v. *Superior Court,* 71 Cal.2d 287, 290 [78 Cal.Rptr. 504, 455 P.2d 432]; *People* v. *Rosales,* 68 Cal.2d 299, 304-305 [66 Cal.Rptr. 1, 437 P.2d 489].) Section 844 provides, in pertinent part, as follows: "To make an arrest, . . . a peace officer, may break open the door or window of the house in which the person to be arrested is, or in which they have reasonable grounds for believing him to be, after having demanded admittance and explained the purpose for which admittance is desired." ■ It is conceded by the Attorney General that even the minimal requirements[3] of this section were not complied with. However, it is the People's contention that section 844 is not applicable to the facts of this case.

We agree with the People's contention that section 844 does not apply here. Initially we point out that while the structure in question may constitute a "house" within the meaning of section 844, the cases which have construed the application of the section indicate that its purpose is "to preclude violent resistance to unexplained entries and to protect the security of innocent persons who may also be present on premises where an arrest is made" (*People* v. *Rosales, supra,* 68 Cal.2d 299, 304), and that the section is primarily designed to protect the fundamental right deeply rooted in our heritage that a person cannot lawfully be arrested in a *home* by officers breaking in unless the officers first give him notice of their authority and purpose. (*People* v. *Beamon,* 268 Cal.App.2d 61, 63-64 [73 Cal.Rptr. 604]; *People* v. *Rosales, supra,* at pp. 304-305; see *Miller* v. *United States,* 357 U.S. 301, 313-314 [2 L.Ed.2d 1332, 1340-1341, 78 S.Ct. 1190].) In *Rosales* we find this significant language: " 'Every *house-*

---

[3]In *Greven* v. *Superior Court, supra,* it was held that in all instances the police officers must give notice of their authority. (71 Cal.2d 287, 291-292; see *People* v. *Garber,* 275 Cal.App.2d 119, 131 [80 Cal.Rptr. 214].)

*holder,* the good and the bad, the guilty and the innocent, is entitled to the protection designed to secure the common interest against unlawful invasion of the house.' " (P. 304 [2 L.Ed.2d at p. 1335]; italics added.)

In *People* v. *Ortiz,* 276 Cal.App.2d 1, 5 [80 Cal.Rptr. 469], it was held that where police officers have reason to believe that there is no lawful occupant in a house,[4] it is reasonable for them to conclude that any person living inside the house is a trespasser and compliance with section 844 is unnecessary. In so holding the reviewing court stated as follows: "Penal Code section 844 is not to be used to protect a trespasser's right to privacy in someone else's home. A trespasser—or a burglar—cannot make another man's home his castle. . . . When police officers have reasonable cause to believe that persons within a house are either trespassers or burglars we do not construe these individuals as *householders* entitled to the protection of Penal Code section 844." (P. 5.)

A factual situation similar to that in the instant case, except that there the building entered was an abandoned garage to the rear of an abandoned dwelling, was considered in *People* v. *Medina,* 265 Cal.App.2d 703 [71 Cal.Rptr. 586]. In holding that section 844 was not applicable the reviewing court stated: "Under the circumstances, it was reasonable for the deputy to believe that both the house and the garage were abandoned; he was also justified in the belief that those persons he saw in the garage 'had no business there' and 'were not the occupants of the house,' but car thieves who had chosen the garage because it was abandoned in which to hide and strip a stolen car." (P. 708.)[5]

In the instant case, while the structure came within the definition of a house, it was not the type of house contemplated by section 844 since it was abandoned and was known to be abandoned by both McKenzie and defendants. Clearly it was not a home; more significantly it was a building which defendants did not have a right to occupy. Defendants were not innocent persons or the type of householder the statute was designed to protect in view of defendant's testimony that he had entered the premises for the purpose of stealing fixtures and other items and Deanda's testimony that he entered and occupied the premises for the illegal purpose of using narcotics. By his own admission defendant was a burglar, and both defendants, at the very least, were trespassers. We point out, moreover, that McKenzie did not enter the premises "to make an arrest" but to *investigate*

---

[4]In this case the lawful owner requested the police to enter his house and gave them a key to do so.

[5]The deputy knew that the area had a high rate of stolen vehicles recoveries and vehicle stripping. (P. 705.)

a complaint made by a neighbor that prowlers were in the building which he knew to be abandoned and unoccupied after it had been condemned for the construction of a freeway. By virtue of his obligations as a police officer he was fulfilling his duty to investigate the neighbor's report and, upon hearing voices in the house and observing the figures of persons through a side window, he was justified in his belief that the persons in the house had no right to be there.

We are cognizant that, aside from the requirements of section 844, a person is, under Fourth Amendment, entitled to be secure in his person and house against unreasonable searches and seizures. In the recent case of *People* v. *Edwards,* 71 Cal.2d 1096 [80 Cal.Rptr. 633, 458 P.2d 713], the Supreme Court, in discussing whether a particular place is a "constitutionally protected area" within the meaning of the Fourth Amendment, enunciated that the appropriate test in making such a determination "is whether the person has exhibited a reasonable expectation of privacy, and if so, whether that expectation has been violated by unreasonable governmental intrusion." (Pp. 1100, 1104.) Consonant with this principle the courts have articulated the rule that police officers in the performance of their duties may, without doing violence to the Constitution, enter upon a common hallway of an apartment or an apartment house garage, used in common by tenants of the apartment building, that, even if such an entry constitutes a trespass, it does not violate the Fourth Amendment because the amendment prohibits unreasonable searches and seizures, not trespasses. (*People* v. *Terry,* 70 Cal.2d 410, 427-428 [77 Cal.Rptr. 460, 454 P.2d 36]; *People* v. *Seals,* 263 Cal.App.2d 575, 576 et seq. [69 Cal.Rptr. 861] and cases there cited; see *People* v. *Edwards, supra,* at p. 1104.)

In the light of the foregoing authorities, we are satisfied that the entry and the subsequent search and seizure were lawful. Under the facts and circumstances surrounding defendant's occupancy, it does not appear that he exhibited a reasonable expectation of privacy. Moreover, as already pointed out, the governmental intrusion was not unreasonable. We are also satisfied that an abandoned house such as the one in question, frequented as it was by prowlers, became, by reason of its common use, an area which was not constitutionally protected upon the same rationale which the cases have applied to a common hallway and an apartment house garage.

## Right to Counsel

In asserting that he was denied the assistance of counsel, defendant predicates his claim upon the basis that the full admission of guilt by his codefendant Deanda so clashed with the denial of guilt by defendant that their mutual attorney was precluded from fully and fairly representing the interests of both defendants. Defendant asserts that the existence of such conflict finds support in the fact that during the course of the trial he made a request for a separate attorney.

The record discloses that both defendants testified. Deanda testified that he drove his car to the vacant house because he had some heroin he wanted to use; that he needed an injector for the heroin and he believed he might find one in the house because narcotic users went there to use narcotics; that after parking his car he met Sanchez by chance and in order to get rid of Sanchez told him he intended to look inside the house for fixtures he might sell; and that Sanchez, who stated he was out of a job, stated he wished to accompany him. Deanda admitted he threw the heroin out of the window when the officer arrived and that Sanchez was not aware that Deanda had possession of the heroin.

Sanchez testified substantially in accord with Deanda. In addition, he admitted he had a fresh needle mark on his right arm on the date of his arrest because on that morning, as well as the previous two mornings, he had injected himself with a powder combination of methedrine and amphetamine. He also admitted previous use and knowledge of heroin and commitment to the California Rehabilitation Center as an addict, but denied use or knowledge of heroin on the date of the instant arrest.

The record also discloses that on the afternoon of the second day of the trial, after Officers McKenzie and Mallett had testified, the public defender advised the court that defendants wanted to discharge him as their attorney and have another attorney appointed. Both defendants then stated to the judge that they felt that the public defender was not representing them adequately because he was treating the case superficially. The colloquy between the court, counsel and defendants indicates that defendants disagreed with the manner in which the public defender was conducting the case. The trial judge stated that the trial was "going to proceed anyway" and that a new attorney would not be prepared to properly represent them. Sanchez indicated that he and Deanda desired the services of a lawyer from the American Civil Liberties Union whom they knew would be willing to represent them. The trial judge then opined that such a lawyer would not "want to come in in the middle of trial." Thereupon, after expressing the opinion that the public defender was competent, the court denied the motion.

██ Adverting to the claim of conflict of interest, we note, preliminarily, that the mere fact that an attorney is appointed to represent multiple defendants does not deprive any defendant of his right to counsel. (*People v. Ingle,* 53 Cal.2d 407, 416-417 [2 Cal.Rptr. 14, 348 P.2d 577]; *People v. Hughes,* 268 Cal.App.2d 796, 798-799 [74 Cal.Rptr. 107]; *People v. Jolke,* 242 Cal.App.2d 132, 140 [51 Cal.Rptr. 171].) The right to counsel guaranteed by the federal and California Constitutions does not include an automatic right to separate counsel for each defendant. (*People v. Chacon,* 69 Cal.2d 765, 774 [73 Cal.Rptr. 10, 447 P.2d 106].) In *Chacon,* the Supreme Court stated as follows: "One counsel may represent more than one defendant so long as the representation is effective. [Citation.] Effective assistance of counsel is assistance 'untrammeled and unimpaired by a court order requiring that one lawyer shall simultaneously represent conflicting interests.' [Citations.] If counsel must represent conflicting interests or is ineffective because of the burdens of representing more than one defendant, the injured defendant has been denied his constitutional right to effective counsel. [Citations.]" (P. 774.)

██ In the instant case we note, initially, that the trial court did not advise defendants of their right to separate counsel. We also observe that no objection was made to the public defender's appointment to represent both defendants, nor does the record disclose that defendant or his codefendant made any suggestion at any time, either before or during the trial, of possible conflict between defendants. The objection interposed to the public defender's representation made during the trial was not that a conflict of interest existed but that *both* defendants were not pleased with the manner in which the public defender was conducting their defense.
██ In any event, we take cognizance of the rule declared in *Chacon* that a waiver of the right to separate counsel will not be implied by the reviewing court from the defendants' silence where it appears that a conflict of interest did in fact exist. (*People v. Chacon, supra,* 69 Cal.2d 765, 774.) Accordingly, we must determine upon a search of the record whether any conflict of interest did in fact develop.

██ The record discloses that at the trial Deanda completely exonerated defendant and that Deanda's narrative of the events transpiring before and at the time of the arrest was in substantial accord with defendant's testimony. The record discloses, moreover, that the public defender's representation of defendant was not less effective because of his representation of Deanda. The circumstance that the public defender did not resist the request by both defendants that he be removed and that he indicated that defendants should be allowed to bring out the points of their case as they saw fit, does not indicate the possibility that a stronger defense was available to defendant in view of his defense of innocence and the support

given by Deanda to that defense. We see no conflict engendered, moreover, by Deanda's testimony that he and defendant became good friends while both were at the California Rehabilitation Center for narcotic addicts. This information could have properly been elicited from Deanda upon his electing to testify in order to exculpate defendant even if both defendants were represented by separate counsel. Defendant makes other references of examples of the manner in which defendant was not afforded effective representation of counsel because he also represented Deanda.[6] The gist of all of these is that because defendant's counsel represented both defendants he was precluded from making a vigorous assault on Deanda. Since Deanda, without reservation, completely exculpated defendant from any involvement and did not implicate defendant in the sightest degree either by extrajudicial statement or testimony, the necessity for a vigorous cross-examination or attack in the final argument was obviated. Accordingly, since defendant's defense was one of complete innocence and Deanda's position was that of full responsibility for the possession of the narcotic, it is difficult to apprehend that defendant's counsel would have treated Deanda differently if he had been represented by other counsel or if Deanda had pleaded guilty through other counsel and then offered himself as a witness on defendant's behalf. Our analysis is equally applicable to the argument of conflict on the basis that Deanda was heavily involved because of his admission of guilt. In essence, the basis of this alleged element of conflict is that the positions of defendant and Deanda were inconsistent and adverse to each other because Deanda admitted his guilt and presented no defense while defendant denied his guilt and presented a defense, which if believed, could have resulted in defendant's acquittal. In considering this contention we note that although defendant did present other matters in his defense, the essence of his defense was that he did not possess the subject narcotic at any time. Deanda's position was clearly consistent with defendant's defense. ▉ Although it is true that the concept of conflict of interest encompasses more than inconsistent defenses and that there may be a right to separate representation simply because one defendant is more heavily involved than the other (*People* v. *Gallardo,* 269 Cal.App.2d 86, 89 [74

---

[6]Defendant argues: (1) That separate counsel representing defendant would try to have Deanda plead guilty and testify on behalf of defendant; (2) the jury selection process was impaired with respect to defendant because a juror acceptable to defendant might not be deemed satisfactory to Deanda because their testimony as given was at complete extremes; (3) good trial tactics called for attacking the small quantity of the narcotic that was found, but this could not be done because Deanda testified that it was his and to do so would be to discredit Deanda; (4) no effort was made to develop the line of inquiry as to which defendant was closer to the window below which the narcotic was found; (5) the jury was unable to separate defendant's case from Deanda's because of the latter's admission of guilt, and to that extent defendant was prejudiced.

Cal.Rptr. 572]; *People* v. *Douglas,* 61 Cal.2d 430, 436-437 [38 Cal.Rptr. 884, 392 P.2d 964]; *People* v. *Chacon, supra,* 69 Cal.2d 765, 775), the concept of heavier involvement, which places counsel in the position to treat his clients as a group and to abandon arguments and tactics that would apply to them separately (*People* v. *Chacon, supra*), applies where both defendants are offering a defense to the charge and not to the situation where one defendant admits his guilt and exculpates the other defendant. In the latter situation the aspect of heavier involvement on the part of the defendant admitting his guilt operates to the benefit and not to the detriment of his codefendant. ■ We therefore conclude that in the present case there was neither conflict nor ineffective assistance of counsel.

### The Prior Conviction

■ In 1964 defendant entered a plea of guilty to a charge of violating Health and Safety Code section 11500 (possession of a narcotic: heroin). These criminal proceedings were adjourned and civil proceedings pursuant to section 6451 of the Penal Code, now section 3051 of the Welfare and Institutions Code, were instituted resulting in defendant's commitment to the California Rehabilitation Center for treatment as a narcotic addict. Defendant was thereafter released on parole from the Center with outpatient status. It was while on said parole that defendant was arrested for the instant offense. In the information charging the present offense defendant was also charged with the commission of the 1964 offense. Defendant denied the prior felony conviction. The jury in its verdict found that it was true that defendant had suffered the prior conviction. Defendant contends that the 1964 felony offense could not be charged as a prior for the purpose of aggravating punishment under Health and Safety Code section 11500 because judgment in the 1964 criminal proceedings had not yet been imposed. This contention is without merit.

The thrust of defendant's contention is that in order for the narcotic conviction in 1964 to constitute a prior conviction it was necessary, since the criminal proceedings were suspended and defendant was committed to the California Rehabilitation Center for treatment, that he fully complete all treatment, be discharged, and the criminal proceedings dismissed under Penal Code section 1203.4.[7] Accordingly, defendant argues that there

---

[7]Section 3200 of the Welfare and Institutions Code provides that a person committed to the narcotic rehabilitation program who is rehabilitated as provided in said section shall be discharged from the program. Upon such discharge the superior court may dismiss the criminal charges of which such person was convicted. Such dismissal has the same force and effect as a dismissal under section 1203.4 of the Penal Code applying to defendants who have fulfilled the conditions of probation except that the conviction is a prior conviction for purposes of Division 10 of the Health and Safety Code dealing with narcotics.

could be no prior conviction because he had not been discharged from treatment nor had the criminal proceedings against him been dismissed.

The argument made by defendant has been expressly rejected in *People v. Rodriguez,* 243 Cal.App.2d 522, 526-528 [52 Cal.Rptr. 643], and *People* v. *McCuiston,* 246 Cal.App.2d 799, 808-811 [55 Cal.Rptr. 482]. These cases hold that a plea of guilty to the narcotic offense charged constitutes a conviction and that a suspension of the criminal proceedings to permit commitment as a narcotic addict under former Penal Code section 6451 (now Welf. & Inst. Code, § 3051) does not foreclose the effect of the conviction in determining the extent of punishment for a second offense. In *Rodriguez* and *McCuiston,* as here, the defendant was on parole from the commitment at the time of his arrest for the second violation. In those cases contentions were made similar to those which defendant makes here.

### The Charge of Prior Conviction

█ Defendant contends that the language used in the information to allege that he had suffered a prior conviction caused prejudicial error because it alleged that defendant served a term therefor "in a penal institution, to wit: the California State Prison." As already noted defendant did not serve a term in the state prison upon the prior conviction but was committed to the California Rehabilitation Center.

Section 969 provides that in charging the fact of a previous conviction of a felony it is sufficient to state only that he was convicted of a felony and to give the title of the court in which the conviction was had. Accordingly, except where the charge of prior conviction is based on a statute containing a clause making the element of penal servitude under the prior conviction essential to the imposition of a more severe penalty, it is not necessary to allege the fact of penal servitude. (*People* v. *Noland,* 30 Cal.App.2d 386, 390 [86 P.2d 363]; *In re McConnell,* 5 Cal.2d 436, 437 [55 P.2d 205].) Under Health and Safety Code section 11500 the element of penal servitude under a prior conviction is not essential to the imposition of a more severe penalty. Therefore, in the present case, it was neither necessary to charge nor to prove penal servitude under the prior conviction, and the fact that it was charged was mere surplusage and not essential to proof of the prior conviction. In this regard we note that the district attorney did not offer proof of penal servitude under the prior conviction, but proof, only, of the prior conviction.

The language to the effect that defendant served a term in prison as a consequence of his prior conviction constituted, in view of the foregoing, a departure from the form or mode prescribed in section 969. Such a departure, however, does not render the pleading invalid unless it has

actually prejudiced the defendant in respect to a substantial right. (§§ 960, 1258, 1404; *People* v. *Codina,* 30 Cal.2d 356, 360 [181 P.2d 881]; *People* v. *Hitchcock,* 104 Cal. 482, 484 [38 P. 198]; *People* v. *Haley,* 102 Cal.App.2d 159, 164 [227 P.2d 48]; *People* v. *Thompson,* 7 Cal.App. 616, 620-621 [95 P. 386].) In this regard we first observe that the subject superfluous language in the information would not prevent a defendant of common understanding from being fully informed of the prior with which he was charged. Defendant, therefore, was not prejudiced in the preparation of his defense to the allegation of the prior conviction. (See *People* v. *Katzman,* 258 Cal.App.2d 777, 784 [66 Cal.Rptr. 319]; *In re Williams,* 257 Cal.App.2d 592, 595 [65 Cal.Rptr. 52]; *People* v. *Sanchez,* 35 Cal.App.2d 316, 317-318 [95 P.2d 462]; *People* v. *King,* 56 Cal.App. 484, 485-486 [205 P. 703].) In *Williams, supra,* it was noted that in the allegation of a prior conviction the need for particularity is somewhat diminished because the defendant himself has knowledge of his prior record. (P. 595.) Moreoever, in the present case there is ample evidence in the record to show that, notwithstanding the error in naming the place to which defendant had been committed, he was well aware of the previous conviction referred to and was not misled in preparing his defense to that allegation.

We also observe that since the subject defect appeared on the face of the information it was subject to demurrer. (§ 1004, 1012; *People* v. *Matuszewski,* 138 Cal. 533, 535 [71 P. 701]; *People* v. *Bryon,* 103 Cal. 675, 677 [37 P. 754]; *People* v. *Sanchez, supra,* 35 Cal.App.2d 316, 317; see *People* v. *Codina, supra,* 30 Cal.2d 356, 360.) Here no attack upon the alleged defect was made by way of demurrer. In *Matuszewski, supra,* it was held that, in the absence of a demurrer specifically challenging the portion of an information charging a prior conviction where the defect with respect to the allegation of the prior conviction appears on the face of the information, the defect must be treated as waived and the information must be deemed sufficient. (P. 536.)

The thrust of defendant's claim of prejudice is that the jury was apprised of the erroneous fact that defendant had served a term in the state prison when, at the beginning of the trial, the clerk read the information containing the statement and the prosecutor alluded to it in his opening statement. Defendant asserts that we must assume he would not have denied the prior had it been properly charged, and he urges that since he was forced to deny the prior conviction because he could not admit what was not true, the allegation of the prior conviction came before the jury to his prejudice. In this regard we note that it is clear from the record that defendant was not misled by the allegation of the prior conviction and that his denial was based on his belief that he had not suffered a prior conviction

because he had been committed to the California Rehabilitation Center and was on outpatient status when he was arrested for the present offense. The record discloses that on the first day of trial defendant himself stated to the trial court that he "was never convicted on that prior," and that after the information had been read to the jury by the clerk and the prior conviction as charged had been alluded to by the prosecutor in his opening charge, defendant himself again reiterated his claim that he had not suffered a prior conviction. It was then, for the first time, that defendant objected to the statement that he had served time in the state prison. The prosecutor, thereafter, in proving the prior conviction through the custodian of records of Santa Clara County avoided any reference to the place of detention and merely established the conviction. When defendant took the stand in his own defense he denied the prior conviction on the basis that he was committed to the California Rehabilitation Center. Upon the insistence of defense counsel the trial court, in view of the state prison allegation, permitted defendant to testify that he had been committed to a hospital and not to a prison.[8]

The record discloses further that in his argument to the jury the prosecutor acknowledged that the language in the information stating that defendant had served a term in the state prison was superfluous and could have been left out, and that he had not proved that defendant was sent to the state prison. In its instruction the trial court specifically told the jury "that if you find that on a previous occasion the defendant pleaded guilty to a violation of Section 11500 of the Health and Safety Code and the trial court, in lieu of imposing a sentence, committeed him to the Narcotic Rehabilitation Center, such proceedings constituted a prior conviction of a felony." This instruction was subsequently repeated to the jury at the request of the foreman. Under the circumstances it is clear that any notion the jury might have received that defendant had served a term in the state prison was dissipated. Accordingly, we perceive no prejudice to defendant resulting from the reference to the superfluous allegation. Moreover, we are satsified, after examining the entire cause, that it is not reasonably probable that a result more favorable to defendant on the issue of his prior conviction would have been reached if the subject prison allegation had not come to the jury's attention in view of the fact that the prior conviction was properly before the jury. (See *People* v. *Watson,* 46 Cal.2d 818, 835-838 [299 P.2d 243].)

▇▇▇ Finally, defendant asserts error in the manner of proving the prior conviction through the custodian of records in that the prosecutor

---

[8]The trial court, out of the presence of the jury, offered to instruct the jury that the California Rehabilitation Center commitment was a civil commitment, that the center was not a prison, and that defendant didn't have to testify to it.

asked the custodian whether the information in the 1964 case contained a "Count Two" and what plea was entered to that count. The basis of this claim of error is that the jury was given the impression that defendant may have been guilty of another felony. The record reflects that the calling of the custodian to prove the subject prior was done to obviate the possibility that other priors charged in the information might come before the jury since these alleged priors were mentioned in the 1964 information but were not charged against defendant in the present proceeding. The procedure utilized in proving the prior conviction was concurred in by defendant's counsel. Moreover, no objection to this procedure or to the questions asked of the custodian was interposed by defendant at the trial. Under the circumstances he is deemed to have waived any claim of error. (Evid. Code, § 353; *People* v. *Moore,* 205 Cal.App.2d 754, 761 [23 Cal.Rptr. 502]; *People* v. *Fontaine,* 237 Cal.App.2d 320, 329 [46 Cal.Rptr. 855]; *People* v. *Thompson,* 252 Cal.App.2d 76, 91 [60 Cal.Rptr. 203].)

The judgment is affirmed.

Sims, J., and Elkington, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied February 5, 1970.