[Crim. No. 12729. First Dist., Div. Two. Mar. 17, 1975.]

THE PEOPLE, Plaintiff and Respondent, v.
RAYNALDO H. ONTIVEROS et al., Defendants and Appellants.

**COUNSEL**

David E. Nelson, under appointment by the Court of Appeal, for Defendants and Appellants.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, Edward P. O'Brien, Assistant Attorney General, Robert R. Granucci and Ronald E. Niver, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**BRAY, J.**\*—Defendants Jesse H. Ontiveros and Raynaldo H. Ontiveros appeal from judgment, after jury verdict, of the Santa Clara County Superior Court, adjudging them guilty of the offenses hereinafter described.

### QUESTIONS PRESENTED

1) Substantial evidence supports the conviction of Jesse Ontiveros.

2) Defendants were not denied the effective assistance of counsel because of his representation of four defendants.

### RECORD

Defendants Jesse Ontiveros and Raynaldo Ontiveros were charged with Juan Ontiveros and Jack Ross with various offenses. They were jointly tried and were represented by James Ono and Mrs. Nicoara, attorneys of defendants' own choosing.[1] All defendants were convicted as hereinafter set forth. Only Jesse and Raynaldo appeal.

Jesse was charged with three counts of assault with a deadly weapon upon a police officer (Pen. Code, § 245, subd. (b)),[2] two with a metal pipe and one with a hammer. Raynaldo was charged with two counts of violation of subdivision (b) of section 245 with a metal pipe. Codefendant Jack Ross was charged with one count of violation of subdivision (b) of section 245 with a tire iron. He was also charged with and admitted two prior convictions. Juan Ontiveros was charged with a violation of sections 240-241 (assault on a police officer). The other three codefendants were each also charged with a violation of sections 240-241. One of the counts under subdivision (b) of section 245 was dismissed as to Raynaldo.

At the trial the jury found Raynaldo guilty of assault upon a police officer, sections 240-241, and two counts of violation of subdivision (b) of section 245. Jesse was found guilty of two counts of violation of subdivision (b) of section 245. The jury was unable to reach a verdict as

---

\*Retired Presiding Justice of the Court of Appeal sitting under assignment by the Chairman of the Judicial Council.

[1]Apparently Mrs. Nicoara's in-court activity was limited to delivering an opening statement.

[2]All references are to the Penal Code unless otherwise indicated.

to the third count charging Jesse with violation of subdivision (b) of section 245 and the court declared a mistrial as to that charge. Defendants Juan and Jack were each found guilty of a lesser-included offense, a violation of section 148, and were placed on two years' probation, conditioned upon serving eight months in the county jail. Jesse and Raynaldo were sentenced to state prison.

The version of the affair given by Officers Dubray and Aligo of the San Jose Police Department follows. They were on patrol in an unmarked car when they saw two men speeding in a green Pinto on White Road in San Jose. The Pinto was cutting in and out of the heavy traffic and skidded as it turned left into Park Lane. Oncoming cars on White Road were forced to stop to avoid collisions. Just prior to making the turn, the two men in the Pinto turned to look at the officers who were wearing police uniforms and badges but not caps. From this action and because of the way the car was driven the officers suspected that the Pinto had been stolen. They pursued the Pinto turning on the red light and siren in the car. The Pinto increased its speed, turned right into Parkdale and skidded again. It turned into Moss Point and then stopped in front of the home of the mother of Jesse, Juan and Raynaldo. The evidence as to what happened thereafter was particularly and sharply in conflict.

In the car were Juan and Raynaldo. The officers testified that the Pinto driver attempted to drive away, but was blocked by a parked car in its front and the police car to the rear. Juan, the driver, stepped from the car and began to walk away. Officer Dubray asked Juan to come over to him as he wanted to investigate the possibility of the Pinto being stolen and the reckless driving. (As it turned out the car belonged to Juan and was not stolen.) Juan swore at him and Dubray went after him. Juan "resisted" but Dubray escorted him to the Pinto, and conducted a pat search during which Juan attempted to strike the officer several times with his elbow and to kick him. The officer handcuffed Juan and placed him in the back seat of the police car.

Officer Aligo approached the passenger side of the car. Raynaldo stepped from the car holding a beer bottle with which he threatened to strike Aligo. He was yelling, "Help the pigs got me, the pigs got me." Aligo knocked the beer bottle from his hand and attempted to handcuff him, but Raynaldo turned and hit Aligo in the ribs. Aligo then subdued Raynaldo and dragged him toward the police car. At this point Aligo was hit in the leg by a tire iron and Raynaldo escaped.

A crowd had gathered, and tire irons and missiles were thrown at the officers. Jack Ross and Jesse Ontiveros had joined the crowd. Jack Ross took a four-pronged lug wrench out of a nearby tool chest and waved the tool above his head while yelling and looking toward the officers. Later the lug wrench came flying through the air, landing within a foot of Dubray. Jesse approached the officers swinging a 44-inch pipe several times. He dropped it and fled back into the crowd when the officers drew their revolvers.

Subsequently, Raynaldo came at Dubray swinging his fists. Jack Ross then had another lug wrench in his hands. Meanwhile, Juan, who was in the police car, made several attempts to get out until Dubray struck him in the mouth with his nightstick. Then Dubray saw Jesse holding a ball-peen type hammer. Immediately after this Dubray was struck on the arm with a hammer and turned to see Jesse fleeing empty-handed. Later Jesse attacked Officer Aligo with a small pipe. Aligo struck the pipe from Jesse's hand and knocked Jesse down. Jesse turned and hit Aligo who again knocked him down, handcuffed him and placed him in the police car. Raynaldo then came at the officers swinging the 44-inch pipe which Jesse had had earlier. He was subdued and taken into custody.

All four defendants testified. Their stories were directly contradictory to those of the officers. The occupants of Juan's car did not know there was a police car behind them until they attempted to park and were blocked by parked cars. Their car did not weave and did not exceed 30 miles per hour. The officers knocked the four of them around and beat them up with billy clubs, all without provocation. None of the defendants resisted the officers in any way or caused the officers to brutally react in the way they did except Raynaldo who claimed to have been drunk, and admitted pushing and shoving one of the officers and getting a large pipe from a nearby hydraulic jack which others persuaded him to drop. He stated that he later picked up the pipe again and swung it when the officers allegedly advanced on him with their nightsticks out. Jesse testified that he saw Raynaldo and an officer fighting verbally and physically.

Nine other witnesses testified: Lydia Rocha, Sylvia and Elsie Ontiveros (all of whom were sisters of Jesse and Raynaldo), Larry Barrigan (who was living at the Ontiveros house), Mark Barrigan and Robert Rosas (who were in the Ontiveros house), Marsha Winkler, Edwin Carr and Nancy Carr (all of whom were visiting nearby).

These witnesses corroborated the defendants in their claim that the police officers brutally beat them without any provocation and that the defendants did not resist the officers. Most of them saw Raynaldo holding the pipe but claimed that he immediately dropped it and fell to the ground. Several testified that they did not hear any siren. Some admitted seeing a pipe thrown in the air. One witness testified that Larry Barrigan threw a hammer and that Mark Barrigan threw "a few things."

It is unnecessary to detail the testimony of these witnesses. Suffice it to say that it was diametrically opposed to that of the officers and depicted all four defendants as being the victims of police brutality and as doing nothing to cause it.

1) Substantial evidence supports the conviction of Jesse.

 Defendant Jesse Ontiveros contends that he was convicted of two counts of assault with a deadly weapon based upon the officers' testimony and that said testimony is inherently improbable and insufficient to prove his guilt beyond a reasonable doubt. "An appellate court must view the evidence in the light most favorable to respondent and presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence. (*People* v. *Mosher, supra; People* v. *Redmond,* 71 Cal.2d 745, 755 [79 Cal.Rptr. 529, 457 P.2d 321].) ' "If the circumstances reasonably justify the trier of fact's findings, the opinion of the reviewing court that the circumstances might also be reasonably reconciled with a contrary finding does not warrant a reversal of the judgment." ' (*People* v. *Hillery, supra,* quoting from *People* v. *Robillard,* 55 Cal.2d 88, 93 [10 Cal.Rptr. 167, 358 P.2d 295, 83 A.L.R.2d 1086]; in accord, *People* v. *Mosher, supra, People* v. *Newland,* 15 Cal.2d 678, 680-683 [104 P.2d 778].) The test on appeal is whether substantial evidence supports the conclusion of the trier of fact, not whether the evidence proves guilt beyond a reasonable doubt. *(People* v. *Mosher, supra.)* The appellate court must determine whether a reasonable trier of fact could have found the prosecution sustained its burden of proving the defendant guilty beyond a reasonable doubt. (*People* v. *Redmond, supra; People* v. *Bassett,* 69 Cal.2d 122, 139 [70 Cal.Rptr. 193, 443 P.2d 777]; *People* v. *Hall,* 62 Cal.2d 104, 109-110 [41 Cal.Rptr. 284, 396 P.2d 700].)" (*People* v. *Reilly* (1970) 3 Cal.3d 421, 425 [90 Cal.Rptr. 417, 475 P.2d 649].)

 One count charged Jesse with an assault with a pipe on Officer Dubray and one count charged him with an assault with a pipe on

Officer Aligo. None of the defense witnesses testified to seeing Jesse with a pipe. However, both officers testified to the assaults. Officer Dubray stated that Jesse approached him swinging a 44-inch pipe back and forth but dropped it and fled when the officers drew their service revolvers. Dubray also testified he later observed Jesse attacking Officer Aligo with a small pipe. Officer Aligo testified that Jesse and several other males approached him and Officer Dubray; that Jesse was swinging a large pipe while he yelled at the officers; and that Jesse dropped the pipe when the officers ordered him to, and fled. Officer Aligo also stated that Jesse later approached him swinging a shorter pipe which Aligo knocked out of Jesse's hands. Thus, the testimony of the officers is clearly substantial evidence to support the convictions.

As to defendant's claim that the officers' testimony was inherently improbable, a recent statement by the Supreme Court is in point: "As to the second contention—that the testimony of Ottilia J. was inherently improbable—we apply the rules stated by this court in *People* v. *Huston* (1943) 21 Cal.2d 690 [134 P.2d 758]. ■ 'Although an appellate court will not uphold a judgment or verdict based upon evidence inherently improbable, testimony which merely discloses unusual circumstances does not come within that category. [Citation.] *To warrant the rejection of the statements given by a witness who has been believed by a trial court, there must exist either a physical impossibility that they are true, or their falsity must be apparent without resorting to inferences or deductions.* [Citations.] *Conflicts and even testimony which is subject to justifiable suspicion do not justify the reversal of a judgment, for it is the exclusive province of the trial judge or jury to determine the credibility of a witness and the truth or falsity of the facts upon which a determination depends.* [Citation.]' (21 Cal.2d at p. 693; cf. *People* v. *Headlee* (1941) 18 Cal.2d 266, 267-268 [115 P.2d 427]; *People* v. *Carvalho* (1952) 112 Cal.App.2d 482, 489 [246 P.2d 950].)" (Italics added.) (*People* v. *Thornton* (1974) 11 Cal.3d 738, 754 [114 Cal.Rptr. 467, 523 P.2d 267].)

■ There was nothing inherently improbable in the officers' testimony. It is not claimed, nor could it be, that what the officers' testified to was physically impossible. The fact that the defense witnesses did not corroborate the officers' testimony was a matter for the jury to weigh in reaching a verdict; it did not preclude the jury from deciding that the officers' testimony was to be believed.

2) Defendants were not denied effective assistance of counsel.

■ Defendants Jesse Ontiveros and Raynaldo Ontiveros seek a reversal of their convictions, claiming they were denied effective trial counsel due to a conflict of interests which arose when one attorney of their own choice represented all four defendants.

■ Codefendants are not entitled to separate representation automatically as a matter of right, and the fact that several codefendants are represented by one attorney does not necessarily mean that they were deprived of their right to effective representation. (*People* v. *Mitchell* (1969) 1 Cal.App.3d 35, 37-38 [81 Cal.Rptr. 478] (rehg. and hg. den.).)

This issue was decided by the Supreme Court in *People* v. *Cook* (1975) 13 Cal.3d 663 [119 Cal.Rptr. 500, 532 P.2d 148]. There, the two defendants were arrested for and convicted of possession of marijuana for sale, the marijuana being found in the automobile in which the defendants were riding and which was stopped for speeding. The two defendants employed a single attorney to represent them at the trial. On appeal, it was argued through different counsel that each defendant had other, individual defenses which their jointly retained counsel could not develop because to do so might incriminate the other party involved.

Recognizing that when a court appoints counsel to defend indigent codefendants the trial court is charged with determining whether, because of potential inconsistent defenses, separate counsel should be appointed, the Supreme Court held that the court is not so obligated when defendants employ private counsel; and that criminal defendants who are represented at trial by a single attorney of their own choice cannot later assert that a conflict of interest between them resulted in denying each of them the constitutional right to effective counsel. If there is a conflict of interest based on inconsistent defenses available to an individual defendant, then a defendant is entitled to relief only if he can demonstrate that a crucial defense has been withdrawn because of trial counsel's ineptitude. In such a case the burden is on the retained counsel to ascertain if a conflict exists and, if there is a material conflict, to properly advise the defendants. The failure of counsel in these circumstances is to be treated in the same manner as in other cases of trial counsel's failure. As neither defendant could demonstrate that counsel's conduct withdrew a crucial defense from the case, neither was entitled to relief.

■ We are concerned on this appeal only with whether counsel's representation of the four defendants worked injury to either Jesse or

Raynaldo. Neither Jack Ross nor Juan Ontiveros, whose participation in the melee was minor as compared to the other two defendants, are complaining. An analysis of the evidence as to Jesse and Raynaldo shows that there is no reasonable basis for an informed speculation that the rights of either of the appealing defendants were prejudicially affected by their being jointly represented. The defenses of the defendants were similar and complementary, each claiming to be the victim of an unprovoked attack by Officers Dubray and Aligo. Separate counsel would have presented the same defense and would have had no reason to attack the credibility of the other defendants. Defense counsel was not unduly restricted in summation because the defendants had presented a common defense.

It is true that Jack Ross admitted that he had been convicted of two felonies. However, any prejudicial impact was mitigated by his frank admissions of the convictions during direct examination. Moreover, had defendants had separate counsel the prior convictions would have been equally disclosed. The admissibility of evidence is not affected by the appointment or retention of separate counsel.

Defendants stress the differing degrees of involvement of the defendants to support their contention that separate counsel were necessary, claiming that Juan and Jack were "peripherally involved," that Jesse was shown by the defense testimony to be "guiltless," and that Raynaldo, who claimed to be drunk and admitted that he wielded a pipe, was the most culpable of the four defendants. Even though the evidence was stronger against Raynaldo, primarily because of his admission that he had held the pipe, the difference was merely a matter of degree as the officers testified that they were attacked several times with pipes by both Jesse and Raynaldo. The officers testified that Jack Ross threw a tire iron at them. While there is some difference in the seriousness of the acts of Juan, and possibly Jack, as compared to those of Jesse and Raynaldo, Juan, who was arrested and placed in the patrol car as soon as the cars stopped and participated very little in the melee, and Jack are not complaining of the efficacy of counsel. As between Jesse and Raynaldo, according to the testimony of the officers, the degree of difference in their complicity is so slight, if at all, as not to justify separate counsel, if there were such, in stressing it or to permit such counsel to argue persuasively that only Raynaldo was guilty of the charges.

In this case the defendants did not conspire to commit the charged offenses. Although the crimes occurred during the same altercation, each

defendant was acting independently and each was charged separately. None of the other defendants could have exculpated himself by emphasizing the participation in the melee of any of the others. Raynaldo's guilt or innocence was an issue totally unrelated to the question of whether any or all of the others had committed separate assaults at different times during the confrontation, and the guilt or innocence of each of the other defendants was unrelated to that of Raynaldo. Thus, separate counsel could not have been more successful because there were only two plausible defenses in this case—(1) that the affray did not happen as the officers testified and (2) that any action any of the defendants may have taken was in self-defense. Had separate counsel argued the relative degrees of participation, a "legal dogfight [would have resulted] in which neither defendant is helped and the prosecution is greatly aided." (*People* v. *Bryant* (1969) 275 Cal.App.2d 215, 224 [79 Cal.Rptr. 549].) Under the facts of the instant case, the mere fact of possibly varying degrees of guilt did not create a necessity for separate counsel (cf. *People* v. *Sanchez* (1969) 2 Cal.App.3d 467, 476 [82 Cal.Rptr. 582]). The defendants did not as did the defendants in *People* v. *DeShannon* (1970) 11 Cal.App.3d 982, 988 [90 Cal.Rptr. 300], each occupy "a different and unique position." And, even there the court found the error in not providing separate counsel to be harmless beyond a reasonable doubt.

Defendants contend that, because of the alleged conflict of interests, counsel failed to challenge the officers' testimony that Raynaldo and Jesse had swung pipes of various sizes at them. Trial counsel's tactic is obvious. Dwelling on defendant's use of weapons during cross-examination, in view of Raynaldo's admission of holding a pipe, would have emphasized the presence of those weapons. Trial counsel sought to minimize the impact of the officers' testimony by avoiding the matter on cross-examination and later presenting witnesses who testified that Jesse was never armed and that Raynaldo feebly swung the pipe only to keep the officers away. Separate counsel could not have done more.

The contention that vigorous cross-examination of the officers and of the defense witnesses by separate counsel *might* have shown that the witnesses were confusing Jesse with Raynaldo and vice versa is unfounded. It is absurd to think that the officers could so have confused them in view of the circumstances of the officers being so close to the two men, taking Raynaldo from the car and seeing Jesse come from the house. And, certainly the three sisters of the defendants and the other residents

of the house in which they lived would be able to distinguish the brothers, one from the other.

In light of the number of defense witnesses (13), it is difficult to argue that counsel was constitutionally inadequate by failing to call other witnesses which defendants' brief suggests there were, who *"may have been* very helpful to one defendant but damaging to another."

Defendants' brief also refers to the introduction in evidence of taped statements of the defendants and suggests that *"If* in any way they were incriminating," separate counsel would be needed to protect the rights of each codefendant. Here again counsel on the appeal wants us to speculate as to what was in the tapes. As counsel states, "Since the contents of the tapes are not part of the transcript on appeal, it is not apparent whether parts of any defendant's statements were damaging to other defendants." The record shows that the tapes were admitted in full at joint counsel's request. It would seem that if there were anything in the tapes showing that one defendant's statements were injurious to any other defendant, appealing counsel would have had the tapes included in the record on appeal.

Defendants contend that a conflict of interests prevented effective representation at the time of sentencing. They argue that shared counsel stressed the good character of Juan, thereby suggesting by implication that the characters of Raynaldo and Jesse were otherwise. This contention overlooks the fact that the trial judge refused to follow the probation department's recommendation that Jesse be sentenced to county jail or sent to a diagnostic facility pursuant to Penal Code section 1203.03 prior to a state prison commitment, and that Raynaldo be sent to the California Rehabilitation Center pursuant to section 3051 of the Welfare and Institutions Code. In light of the court's refusal to follow these recommendations, it is obvious that separate counsel could not have persuaded the court to pass more lenient sentences on Jesse or Raynaldo.

Although not of any great significance, it is of some note that defendants had two lawyers of their own choosing who did not see fit to apportion the defense of the defendants between them or to raise any question of conflict of interests.

The record indicates that the guilt of all four defendants was so proven that had each been represented by a separate attorney, it is not reasonable to believe that the verdicts would have been different.

A reading of the record shows that defense counsel were adequate in all respects.

Judgment affirmed.

Taylor, P. J., and Kane, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied May 14, 1975.